**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| VIRGINIA-HIGHLAND RESTAURANT, | ) | Jointly Administered Under |
| LLC and RESTAURANT 104 LLC, | ) | CASE NO. 20-70718-bem |
| | ) | |
| Debtors. | ) | |

_____

**DEBTORS' PLAN OF REORGANIZATION**
_____


**SCROGGINS & WILLIAMSON, P.C.**

**J. Robert Williamson
Georgia Bar No. 765214
Ashley Reynolds Ray
Georgia Bar No. 601559
4401 Northside Drive
Suite 450
Atlanta, GA 30327
(404) 893-3880**

**ATTORNEYS FOR VIRGINIA-HIGHLAND RESTAURANT, LLC AND RESTAURANT 104 LLC, DEBTORS AND DEBTORS-IN-POSSESSION**

**Dated: April 9, 2021**


**NO MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS APPROVED BY THE BANKRUPTCY COURT HAVE BEEN AUTHORIZED FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.**

PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS PLAN SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THIS PLAN UNTIL SUCH TIME AS THE DISCLOSURE STATEMENT (AS DEFINED IN THIS PLAN) HAS BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF IMPAIRED CLAIMS AGAINST AND IMPAIRED INTERESTS IN THE DEBTORS ENTITLED TO VOTE ON THIS PLAN.  THE PROPONENTS RESERVE THE RIGHT TO FILE AN AMENDED OR AMENDED AND RESTATED PLAN AND DISCLOSURE STATEMENT FROM TIME TO TIME.  REFERENCE IS MADE TO THE DISCLOSURE STATEMENT FOR A DISCUSSION OF VOTING INSTRUCTIONS, THE DEBTORS' HISTORY, BUSINESS, PROPERTIES, AND RESULTS OF OPERATIONS, A SUMMARY OF SIGNIFICANT EVENTS WHICH HAVE OCCURRED TO DATE IN THESE JOINTLY-ADMINISTERED CASES, AND THE MEANS OF FUNDING THIS PLAN.  ALL HOLDERS OF CLAIMS AND INTERESTS ARE ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THIS PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS PLAN AND THE DISCLOSURE STATEMENT WILL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

## <u>DEBTORS' PLAN OF REORGANIZATION</u>

Virginia-Highland Restaurant, LLC ("**VH Restaurant**") and Restaurant 104 LLC ("**Restaurant 104**"), debtors and debtors-in-possession in the above-styled jointly administered Chapter 11 case (collectively, the "**Debtors**"), propose the following Plan of Reorganization (the "**Plan**"). For a discussion of the Debtors' history, business, assets, and for a summary and analysis of the Plan and certain related matters, all holders of claims should refer to Debtors' Disclosure Statement filed on April 9, 2021 (the "**Disclosure Statement**"). The Debtors are proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code. All holders of claims are encouraged to read the Plan and Disclosure Statement in their entirety before voting to accept or reject the Plan.

## ARTICLE I
## DEFINED TERMS

For purposes of this Plan, unless defined elsewhere herein, the following terms shall have the respective meanings ascribed to them below. Capitalized terms shall refer to the terms as defined in this Article. Unless otherwise indicated, the singular shall include the plural, the plural shall include the singular and the masculine shall include the feminine and the feminine shall include the masculine in gender. The term "including" shall mean "including, without limitation." Any term in the Plan which is not defined below but which is used in the Bankruptcy Code, Title 11 U.S.C., shall have the meaning ascribed to it in the Bankruptcy Code.

1.1   *Administrative Creditor* means the holder of an Administrative Expense Claim.

1.2   *Administrative Expense* means—

(a)   any cost or expense of administration of the Bankruptcy Case that is allowed under Section 503(b) or 507(a)(1) of the Bankruptcy Code, to the extent the party claiming any such Administrative Expense timely files an application or other Bankruptcy Court-approved pleading seeking such expense in the Bankruptcy Case, including—

(1)   any actual and necessary costs and expenses of preserving the Estate or operating the business of the Debtors (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date;

(2)   any Post-petition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtors in Possession in the ordinary course of its businesses (including any Post-petition Trade Claim);

(3)   any payment required to be made to cure a default under an Assumed Contract, including any Cure Claim, to the extent allowed by a Final Order of the Bankruptcy Court;

(4)   any Claim granted administrative-expense priority status by a Final Order of the Bankruptcy Court; and

(5)   any Claim by a governmental authority for non-ad valorem taxes that are assessed *in personam* (and for interest and/or penalties related to such taxes) for any tax year or period, to the extent such Claim accrues Post-petition;

(b)   any superpriority Claim;

(c)   all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911-1930; and

(d)   any and all other costs or expenses of administration of the Reorganization Case that are allowed by Final Order of the Bankruptcy Court.

The terms "Administrative Expense" and "Administrative Expense Claim" do not include any Priority Tax Claim, any Priority Claim, any Disallowed Claim, or any of the Claims designated in Classes under the Plan.   In no event shall any Claim set forth on a Proof of Claim (or otherwise) be deemed to be an Administrative Expense Claim (except for any claim by a governmental unit for taxes (and for interest and/or penalties related, to such taxes) due from the Debtors for any Post-petition tax year or period).

1.3   ***Administrative Expense Claim*** means a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and entitled to priority payment pursuant to Section 507(a)(2) of the Bankruptcy Code.   The terms "Administrative Expense(s)," "Administrative Claim(s)," and "Administrative Expense Claim(s) are used interchangeably in this Plan.

1.4   ***Administrative Expense Claimant*** means the holder of an Administrative Expense Claim.

1.5   ***Administrative Expense Claim Bar Date*** means the last day for filing an application or other Bankruptcy Court-approved pleading for allowance and/or payment of an Administrative Expense Claim other than (a) a Claim that arises pursuant to 11 U.S.C. §503(b)(9) or (b) Professional Compensation Claims.   The Administrative Expense Claim Bar Date will be thirty (30) days after the Effective Date.

1.6   ***Allowed Amount*** means the dollar amount in which a Claim is an Allowed Claim.

1.7   ***Allowed Claim*** means a Claim against the Debtors to the extent that such Claim is unpaid and (a) has been allowed by a Final Order of the Court; (b) is (i) listed in the Debtors' Schedules, other than a Claim that is Scheduled at zero or unknown amount or as disputed, contingent, or unliquidated, or (ii) evidenced by a proof of claim that has been filed with the Court on or before the Bar Date or deemed filed pursuant to any Final Order of the Court or under applicable law, and as to which (A) no objection to its allowance has been

- 4 -

timely filed, or (B) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order; (c) is an undisputed Post-Petition Trade Claim, or (d) is allowed pursuant to the terms of this Plan.  Notwithstanding any other provision of the Plan, the term "Allowed Claim" shall not include any Claim held by a creditor against which either or both of the Debtors have asserted a Cause of Action that has the effect of precluding a Distribution with respect to such Claim.  An Allowed Claim shall not include any interest accrued after the Petition Date (on any Claim other than a Secured Claim) or any penalty.

1.8     ***Allowed Class ... Claim*** means an Allowed Claim in the particular Class(es) or categories described.

1.9     ***Assets*** or ***Property*** means all property of the Debtors and the Estates as defined in Section 541 of the Bankruptcy Code, including without limitation all right, title, and interest in and to any avoidance actions or other Causes of Action that the Reorganized Debtor or the Estate may have as of the Effective Date or any time thereafter.

1.10    ***Assumed Contract*** means an Executory Contract that is assumed under section 365 of the Bankruptcy Code.

1.11    ***Ballot*** means each of the voting forms accompanying the Disclosure Statement upon which Holders of Impaired Claims or Impaired Interests entitled to vote on the Plan will indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

1.12    ***Bankruptcy Cases, Chapter 11 Cases or Cases*** means the Chapter 11 bankruptcy cases of Virginia-Highland Restaurant LLC (Case No. 20-70718-bem) and Restaurant 104 LLC (Case No. 20-70720-bem) currently pending before the Bankruptcy Court.  Both Cases are being jointly administered under Case No. 20-70718-bem, and are to be substantively consolidated under the Plan.

1.13    ***Bankruptcy Code*** or ***Code*** means the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code, 11 U.S.C. Sections 101 *et seq*., and all amendments thereto.

1.14    ***Bankruptcy Court*** means the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, or as the context requires, any other court of competent jurisdiction exercising jurisdiction over the Bankruptcy Case.

1.15    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court (N.D. Ga. L.B.R.), as in effect on the Petition Date, together with any amendments and modifications to the Bankruptcy Rules that were subsequently made applicable to the Cases.

- 5 -

1.16   **Bar Date** means (a) 5:00 p.m. (Eastern) on March 31, 2021, for claims asserted by all non-governmental units or (b) 5:00 p.m. (Eastern) on April 11, 2021, for claims asserted by any governmental units.

1.17   **Bar Date Order** means the order entered by the Bankruptcy Court on February 10, 2021[Doc. No. 69] establishing the Bar Date.

1.18   **Business Day** means any day, other than a Saturday, Sunday or "legal holiday" as that term is defined in Bankruptcy Rule 9006(a), that commercial banks are open for business in Atlanta, Georgia.

1.19   **Cash** means legal tender of the United States of America.   When used in the Plan with respect to a distribution under the Plan, the term "Cash" means lawful currency of the United States of America, a certified check, a Cashier's check, a wire transfer of immediately available funds from any source, or a check from the Debtors drawn on a domestic bank.

1.20   **Causes of Action** means any and all of the Estates' and the Debtors' actions, Claims, demands, rights, defenses, counterclaims, suits, causes of action, liabilities, obligations, debts, judgments, remedies, damages, recoupments, cross claims, counterclaims, third-party claims, indemnity claims, contribution claims, and any other claims, whether known or unknown, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate in law, equity or otherwise, including all avoidance actions and rights to recover transfers voidable or recoverable under Sections 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code, and any and all other Claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party.   Some of the Causes of Action may be described in further detail in the Disclosure Statement.   A Cause of Action will not under any circumstances be waived as a result of the failure of the Debtors to describe such Cause of Action with specificity in the Plan or the Disclosure Statement.   Causes of Action shall include, but not be limited to, those payments and other transactions identified in the Schedules.   Causes of Action shall survive confirmation of the Plan.

1.21   **Claim** shall have the meaning set forth in Section 101(5) of the Bankruptcy Code.

1.22   **Claimant** means the holder of a Claim.   The terms "Claimant" and "Creditor" may be used interchangeable in this Plan.

1.23   **Claims Litigation** means any and all litigation or proceedings arising out of objections to Claims asserted against the Estate(s), or affirmative counterclaims or requests for setoff or recoupment that are raised with regard to Claims asserted against the Estate(s).

1.24   **Class** means a category of Claims or Equity Interests classified together as described in Article III of the Plan, pursuant to Section 1122(a) of the Bankruptcy Code.

1.25   **Clerk** means the Clerk of the Bankruptcy Court.

1.26    ***Confirmation*** or ***Confirmation of the Plan*** means approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

1.27    ***Confirmation Date*** means the date on which the Confirmation Order is entered on the docket of the Court pursuant to Bankruptcy Rule 5003(a).

1.28    ***Confirmation Hearing*** means the hearing(s) held by the Bankruptcy Court pursuant to Section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

1.29    ***Confirmation Order*** means the Final Order issued and entered confirming the Plan, pursuant to Section 1129 of the Bankruptcy Code.

1.30    ***Consummation Date*** means the date on which the Reorganized Debtor makes the final Distribution in accordance with the Plan.

1.31    ***Contingent***, with reference to a Claim, means a Claim that has not accrued and that is dependent on a future event that may or may not occur.

1.32    ***Creditor*** means the Holder of a Claim, as set forth in Section 101(10) of the Bankruptcy Code, including Creditors with Administrative Expense Claims, Priority Tax Claims, Priority Claims, Secured Claims, Unsecured Claims, and any other Claims classified in the Plan.

1.33    ***Cure Claim*** means any Claim for any cure payment, cost or other amount, if any, due and owing by the Debtors pursuant to Section 365(b) of the Bankruptcy Code or otherwise, and any Claim for a default (monetary or nonmonetary) arising from, relating to, or in connection with the assumption by the Debtors of any Assumed Contract.

1.34    ***Debtors or Debtors in Possession*** means collectively, Virginia-Highland Restaurant, LLC and Restaurant 104 LLC.

1.35    ***Designated Notice*** means notice and an opportunity for a hearing as defined in Section 102(a) of the Bankruptcy Code, with notice limited to the Reorganized Debtor, the Office of the United States Trustee, or their respective counsel, and other parties in interest who, after entry of the Confirmation Order, file a request for such notice with the clerk of the Court and serve a copy of such notice on counsel for the Reorganized Debtor.

1.36    ***Disallowed Claim*** means: (a) a Claim, or any portion thereof, that has been disallowed by a Final Order of the Court or otherwise in accordance with the Plan; (b) a Claim that has been listed in the Schedules in the amount of zero dollars or an unknown amount or as contingent, disputed or unliquidated, and as to which no proof of claim has been timely filed or deemed timely filed with the Court pursuant to the Bankruptcy Code, any Final Order of the Court or other applicable law; or (c) a Claim that has not been listed in the

Schedules and as to which no proof of claim has been timely filed or deemed timely filed with the Court pursuant to the Bankruptcy Code, any Final Order of the Court or other applicable law.

1.37   ***Disclosure Statement*** means the document titled *Disclosure Statement to Accompany Debtors' Plan Of Reorganization*, including all attached exhibits, appendices, and schedules, filed pursuant to Section 1125 of the Bankruptcy Code and approved by the Bankruptcy Court as containing "adequate information" as that term is defined by Section 1125(a)(1) of the Bankruptcy Code, as the same may be amended from time to time by any duly authorized amendment or modification, all of which are hereby incorporated into and made a part of this Plan as if set out herein verbatim.

1.38   ***Disclosure Statement Approval Order*** means the Order Approving Disclosure Statement entered in the Cases.

1.39   ***Disputed Claim*** shall mean a Claim as to which an objection has been or may be timely filed by a party-in-interest with standing and which objection has not been withdrawn or determined by a Final Order and which is not the subject of a compromise and settlement as described in this Plan.   Disputed Claims shall also include any Claim held by a creditor against which the Debtors have asserted a claim that has the effect, under Section 502(d) of the Bankruptcy Code, of precluding a Distribution with respect to such Claim.

1.40   ***Distribution*** means a distribution or payment of Cash, Property, interests in Property or other value as described under the Plan to holders of Allowed Claims.

1.41   ***Distribution Date*** means the date of any Distribution under the Plan.

1.42   ***Distribution Record Date*** means the date that is fifteen (15) calendar days prior to a Distribution Date.

1.43   ***Docket*** means the docket or dockets in the Bankruptcy Case maintained by the Clerk.

1.44   ***Effective Date*** means the first business day following thirty (30) days after the Confirmation Date, or such later date as the Bankruptcy Court approves if implementation of the Plan is stayed by order of a court of competent jurisdiction.

1.45   ***Equity Interest*** or ***Interest*** means an equity interest of in one or more of the Debtors.

1.46   ***Estate*** means collectively, the estates created for the Debtors under Section 541 of the Bankruptcy Code upon the commencement of the Cases, as may be substantively consolidated under the Plan.

1.47   ***Executory Contract*** means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code

1.48    ***Final Decree*** means the Final Order of the Bankruptcy Court entered pursuant to Bankruptcy Rule 3022 closing the Cases.

1.49    ***Final Decree Date*** means the date on which a Final Decree has been entered closing the Cases.

1.50    ***Final Order*** means an order, judgment, ruling, or other decree (or any revision, modification, or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court that has jurisdiction over any proceeding in connection with the Cases for the purpose of such proceeding, which order, judgment, ruling, or other decree has not been reversed, vacated, stayed, modified, or amended and as to which such order or judgment the time to appeal, petition for certiorari, or seek reargument, review or rehearing has expired and as to which no notice of appeal, petition for certiorari, or motion for reargument, review or rehearing was timely filed or, if timely filed, the order or judgment has been affirmed by the highest court to which the order or judgment was appealed or from which the reargument or rehearing was sought, or certiorari has been denied, and the time to file any further appeal or to petition for certiorari or to seek further reargument or rehearing has expired.

1.51    ***Gordon Food*** means Gordon Food Service, Inc.

1.52    ***Holder*** means:

      (a)   as to any Claim:

            (1)   the owner or Holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim;

            (2)   if no Proof of Claim has been filed with respect to such Claim, the owner or Holder of such Claim as shown on the Schedules or books and records of the Debtors or as otherwise determined by order of the Bankruptcy Court; or

            (3)   if the owner or Holder of such Claim has transferred the Claim to a third party, advised the Debtors in writing of such transfer and transferee, and filed notice of the transfer and transferee with the Clerk of the Bankruptcy Court as required by Bankruptcy Rule 3001(e); and

      (b)   as to any Equity Interest, all owners of Equity Interests as of the Confirmation Date.

1.53    ***Impaired*** means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.54    ***Landlord*** means SRPF A/Marshall's Plaza, LLC SRPF as successor-in-interest to Marshalls Plaza Shopping Center, LLC.

1.55    ***Lease*** means that certain lease agreement dated March 1, 2011 by and between VH Restaurant and SRPF A/Marshall's Plaza, LLC SRPF as successor-in-interest to Marshalls Plaza Shopping Center, LLC.

1.56    ***Person*** means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency, or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

1.57    ***Petition Date*** means October 13, 2020, the date on which the Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

1.58    ***Plan*** means this Plan of Reorganization and any exhibits annexed hereto and any documents delivered in connection herewith as the same may be amended from time to time by a duly authorized amendment or modification.

1.59    ***Plan Documents*** means all documents that aid in effectuating the Plan, including, without limitation, all documents filed with the Bankruptcy Court at or before the Confirmation Hearing, and the Confirmation Order.

1.60    ***Post-confirmation*** means arising or accruing on or after the Confirmation Date.

1.61    ***Post-Petition*** means arising or accruing on or after the Petition Date and before the Effective Date.

1.62    ***Post-Petition Trade Claims*** means any obligations incurred Post-Petition in the ordinary course of business of the Debtors (such as trade and vendor claims), on ordinary course business terms, and which are unrelated to the administration of the bankruptcy estate, exclusive of any obligations to employees of the Debtors.

1.63    ***Prepetition*** means arising or accruing prior to the Petition Date.

1.64    ***Priority Claim*** means a Claim that is entitled to a priority in payment pursuant to subparagraphs (3) through (7) or subparagraph (9) of Section 507(a) of the Bankruptcy Code and that is not an Administrative Expense Claim, Priority Tax Claim, Secured Claim, or Unsecured Claim.

1.65    ***Priority Creditor*** means the holder of a Priority Claim.

- 10 -

1.66    *Priority Tax Claim* means a Claim of a governmental unit entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code and that is not an Administrative Expense, Secured Claim, or Unsecured Claim.

1.67    *Property* means all of the Debtors' and/or the Estates' interest in any property.

1.68    *Proof of Claim* means a proof of claim filed in these Cases pursuant to Bankruptcy Rules 3001, 3002, or 3003 in accordance with various orders of the Bankruptcy Court.

1.69    *Reorganized Debtor* means the substantively consolidated Debtors as of, and subsequent to, the Effective Date.

1.70    *Scheduled* means, with respect to any Claim or Interest, the status and amount, if any, of such Claim or Interest, as set forth in the Debtors' Schedules.

1.71    *Schedules* means, collectively, the Schedules and Statements of Financial Affairs filed by the Debtors in the Cases on November 6, 2020, pursuant to Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as amended or supplemented from time to time.

1.72    *Secured Claim* means a Claim of a creditor secured by a "lien," as that term is defined in Section 101(37) of the Bankruptcy Code, against any "property" of the Estate, as that term is defined in Section 541 of the Bankruptcy Code, but only to the extent of the "value," as determined by agreement between the Creditor and the Debtors or, in the absence of such agreement, as determined by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012.  In accordance with the definition set forth in Section 506(a) of the Bankruptcy Code, "Secured Claim" specifically excludes that portion of an Allowed Claim of a creditor having a lien against any property of the Debtors' Estates to the extent that the value of such creditor's interest in the property is less than the amount of such Allowed Claim.

1.73    *Secured Creditor* means the holder of a Secured Claim.

1.74    *Section 6621 Interest Rate* shall mean the rate of interest charged by the United States for delinquent tax obligations pursuant to 26 U.S.C. § 6621.

1.75    *Tax Claim* means any Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code and any secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under Section 507(a)(8), but for the secured status of such Claim.

1.76    *Unexpired Lease* means a lease to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.77    *Unimpaired Claim* means a Claim that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.78   ***Unsecured Claim*** means any Claim that is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, or a Secured Claim, including (a) any Claim arising from the rejection of an Executory Contract or Unexpired Lease under Section 365 of the Bankruptcy Code and (b) any portion of a Claim to the extent the value of the Holder's interest in the Estates' interest in the Property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code.

1.79   ***Unsecured Creditor*** means the holder of an Unsecured Claim.

1.80   ***Voting Deadline*** means the date established by the Bankruptcy Court for the filing of Ballots to accept or reject the Plan.

**ARTICLE II
TREATMENT OF ADMINISTRATIVE
EXPENSE AND PRIORITY TAX CLAIMS**

2.1   <u>**Nonclassification**</u>.

    In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expenses and Priority Tax Claims have not been classified in the Plan. The treatment accorded to Administrative Expenses and Priority Tax Claims is set forth in this Article II.

2.2   <u>**Administrative Expenses**</u>.

    Except as otherwise provided below, on or before the later to occur of (i) thirty (30) days following the Administrative Expense Claim Bar Date, or (ii) ten (10) business days following the date of entry of a Final Order allowing the Claim, each Holder of an Allowed Administrative Expense Claim (other than Post-Petition Trade Claims) shall be paid in full, in cash in an amount equal to the Allowed Amount of its Administrative Expense Claim, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code.   Notwithstanding the foregoing, each Holder of an Allowed Administrative Expense Claim may be paid (a) on such other terms as may be agreed upon by the Holder of such Allowed Administrative Expense Claim and the Debtors or (b) as otherwise ordered by a Final Order of the Bankruptcy Court.

    All Allowed Post-Petition Trade Claims shall be paid by the Reorganized Debtor in the normal course of business in accordance with any agreement or course of dealings between the Holder of any Allowed Post-Petition Trade Claim and the Debtors.   If and to the extent the Debtors or the Reorganized Debtor dispute all or a portion of any Post-Petition Trade Claim, the dispute may be resolved in the Bankruptcy Court, any court of competent jurisdiction, or as otherwise agreed to by the parties before such Claim will become an Allowed Post-Petition Trade Claim.

2.3   **Fees and Charges**.

All fees and charges assessed against the Estates under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§1911-1930, which are incurred but unpaid for all periods through the Effective Date, will be paid on the Effective Date or as soon as reasonably practicable thereafter, by the Debtors.

2.4   **Applications for Allowance of Administrative Expenses**.

All Holders of Administrative Expense Claims (other than Post-Petition Trade Claims or Professional Compensation Claims) that do not file an application or other Bankruptcy Court-approved pleading on or before the date which is thirty (30) days after entry of the Confirmation Order will be forever barred from asserting such Administrative Expense against the Reorganized Debtor, the Debtors or their Estates.

2.5   **Priority Tax Claims**.

Each holder of an Allowed Priority Tax Claim shall be paid in Cash in full on the Effective Date or as soon thereafter as is reasonably practicable, but in no event later than the end of five (5) years from the Petition Date (the "**Payment Term**").   As to any Allowed Priority Tax Claim not paid in full on the Effective Date, the Holder of such Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim regular quarterly installment payments in Cash in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code through and including the date such Allowed Priority Tax Claim is paid in full.   The Debtors and/or the Reorganized Debtor shall be authorized to prepay all or any portion of an Allowed Priority Tax Claim being paid in installments without penalty and the amount of any remaining quarterly payments shall then be recalculated based upon the outstanding balance payable over the remaining portion of the Payment Term.   Holders of Allowed Priority Tax Claims shall receive interest on account of their Allowed Priority Tax Claims at the Section 6621 Interest Rate; provided, however, that if the Holder of such Allowed Priority Tax Claim is a city, county or state, such Holder shall receive interest on account of its Allowed Priority Tax Claim at the applicable statutory rate under state law. To the extent that any Allowed Priority Tax Claim is allowed after the Effective Date, it will be paid in full in Cash as soon after allowance as is reasonably practicable over a period no later than the end of five (5) years from the Petition Date, including interest as calculated above.

**ARTICLE III**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

3.1   **In General**.

Pursuant to Section 1122 of the Bankruptcy Code, the Claims against and Equity Interests in the Debtors and the Property of the Debtors are classified as set forth in this Article.   The rights of all Claimants, and the responsibilities of the Debtors with respect to those Claimants, shall be based upon their classification herein.   A Claim or Equity Interest is classified (a) in a particular

- 13 -

Class only to the extent the Claim or Equity Interest qualifies within the description of that Class and (b) in a different Class to the extent the Claim or Equity Interest qualifies within the description of that different Class. Unless otherwise expressly stated, the Classes of Claims set forth below include all Claims that qualify within the description of that Class.  As of the Confirmation Hearing, any Class of Claims which does not contain any Creditor's Claims will be deemed deleted automatically from the Plan, and any Class of Claims which does not contain an Allowed Claim (or a Claim temporarily or provisionally Allowed by the Bankruptcy Court for voting purposes) will be deemed automatically deleted from the Plan with respect to voting on confirmation of the Plan.

3.2    **Classes.**

The Claims of Creditors and Holders of Equity Interests under this Plan are divided into the following classes, which classes are mutually exclusive:

(a)    Class 1 shall consist of all Allowed Priority Claims.

(b)    Class 2 shall consist of Allowed Claims of Gordon Food Service, Inc.

(c)    Class 3 shall consist of Allowed Tax Claims (Other than Priority Tax Claims).

(d)    Class 4 shall consist of Other Allowed Secured Claims.

(e)    Class 5 shall Allowed Unsecured Claims.

(f)    Class 6 consists of all Allowed Equity Interests in VH Restaurant.

(g)    Class 7 consists of all Allowed Equity Interests in Restaurant 104.

**ARTICLE IV**
**IMPAIRMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

4.1    **Impaired Classes**.

Classes 2, 3, 5 and 6 are impaired under the Plan.

4.2    **Unimpaired Classes**.

Classes 1, 4 and 7 are unimpaired under the Plan.  These classes are deemed to have accepted the Plan under the provisions of Section 1126(f) of the Bankruptcy Code.

# ARTICLE V
# TREATMENT OF CLASSES UNDER THE PLAN

### 5.1 __In General.__

Claims and Equity Interests will be treated under the Plan in the manner set forth in this Article V.  Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Equity Interests pursuant to the Plan will be in full and final satisfaction, settlement, release, extinguishment, and discharge of their respective Allowed Claims, of any nature whatsoever, and Allowed Equity Interests.

### 5.2 __Unclassified Claims__.

Each Holder of an Allowed Administrative Expense Claim or an Allowed Priority Tax Claim will receive the treatment set forth in Article II of the Plan.

### 5.3 __Class 1 – Allowed Priority Claims.__

Each Holder of an Allowed Priority Claim shall be paid the full amount of such Allowed Priority Claim, in Cash, on or before the later of the Effective Date or, if an objection to such Claim is asserted, five business days following the date of a Final Order allowing any such Claim, or upon such other terms as may be agreed to between the Debtors and a Holder of an Allowed Priority Claim.   Class 1 is unimpaired by the Plan.   All Holders of Claims in Class 1 are deemed to have accepted the Plan and, therefore, are not entitled to vote on the Plan.

### 5.4 __Class 2 – Allowed Claims of Gordon Food Service, Inc.__

Class 2 shall consist of all Allowed Claims of Gordon Food.  By agreement with the Debtors, the Allowed Claims of Gordon Food totals $97,092.60.   On the Effective Date, Gordon Food shall receive a cash distribution in the amount of $17,450.57.  The remaining $79,642.03, plus interest calculated at 4% per annum and attorneys fees not to exceed $5,000, shall be paid by weekly installment payments of $1,000/week until such time as the unpaid balance reaches $11,170.43.  If the Reorganized Debtor is not in default at such time, the $11,170.43 shall be satisfied by application of outstanding rebates and the remaining balance reduced to zero.   If the Reorganized Debtor is in default under the terms hereof, the $11,170.43 remains due and owing and Gordon Food is entitled to a return of $12,000 in rebates previously paid.  The Allowed Claims of Gordon Food shall be reduced to a promissory note secured by all assets of the Debtors and shall be executed on or before the Effective Date.

### 5.5 __Class 3 – Allowed Tax Claims (Other than Priority Tax Claims)__

Class 3 shall consist of all Allowed Tax Claims, other than Priority Tax Claims.  All Allowed Class 3 Tax Claims shall be paid the principal amount of such Claim, exclusive of interest accruing on or after the Petition Date, in the same manner and over the same period of time as

Priority Tax Claims in accordance with Article II, Section 2.5, or upon such other terms as may be agreed to between the Debtors and the Holder of an Allowed Tax Claim.  To the extent any Allowed Tax Claim is secured, the Holder of such Allowed Tax Claim shall retain such security in the same collateral and in the same order of priority as existed immediately prior to the Effective Date.

5.6    **Class 4- Other Allowed Secured Claims.**

Each Other Allowed Secured Claim in Class 4 shall be satisfied, at the Reorganized Debtor's option, as follows (i) by the transfer, assignment and conveyance by the Reorganized Debtor of the collateral securing such Class 4 Claim to the Holder of such Allowed Secured Claim in full and final satisfaction of such Allowed Secured Claim, or (ii) by payment of Cash to the Holder of such Other Allowed Secured Claim in an amount equal to the value of such holder's interest in the collateral securing the Other Allowed Secured Claim.   Class 4 is unimpaired under the Plan.   All Holders of Secured Claims in Class 4 are deemed to have accepted the Plan and, therefore, are not entitled to vote on the Plan.

5.7    **Class 5 – Allowed Unsecured Claims.**

Each Holder of an Allowed Unsecured Claim shall receive a Distribution in an amount equal to the principal amount of their Allowed Unsecured Claim on or before ninety (90) days following the Effective Date.   No Class 5 Allowed Unsecured Claim shall be entitled to interest from or after the Petition Date.   Class 5 is Impaired by the Plan.   Each Holder of an Allowed Unsecured Claim in Class 5 is entitled to vote to accept or reject the Plan.

5.8    **Class 6 – Allowed Equity Interests in VH Restaurant.**

Class 6 consists of all Equity Interests in VH Restaurant.   As of the Effective Date, all Equity Interests in VH Restaurant shall be terminated, cancelled and of no further force or effect. Holders of Class 6 Equity Interests are not entitled to receive or retain any property under the Plan on account of their Equity Interests in VH Restaurant.   Accordingly, Class 6 Equity Interest Holders are deemed to have rejected the Plan pursuant to Section 1126(8).   Class 6 Equity Interest Holders are not entitled to vote on the Plan.

5.9    **Class 7- Allowed Equity Interests of Restaurant 104.**

Class 7 consists of all Equity Interests in Restaurant 104.   As of the Effective Date, Holders of Equity Interests in Restaurant 104 shall retain their Equity Interests in the Reorganized Debtor following Confirmation of the Plan in the same percentages as they held in Restaurant 104 prior to the Effective Date.   Class 7 is Unimpaired by the Plan.   All Holders of Equity Interests in Class 7 are deemed to have accepted the Plan and, therefore, are not entitled to vote on the Plan.

**ARTICLE VI**
**MEANS FOR IMPLEMENTATION OF PLAN**

6.1      **Substantive Consolidation.**

      Entry of the Confirmation Order shall constitute the approval, pursuant to Section 105(a) of the Bankruptcy Code, of the substantive consolidation as of the Effective Date of Virginia-Highland Restaurant LLC and Restaurant 104 LLC and their Estates for all purposes related to Claims and distribution of assets under the Plan.   On and after the Effective Date (i) all assets and liabilities of both of the Debtors and their Estates shall be treated as though they were merged with and into Restaurant 104, LLC as the substantively consolidated Reorganized Debtor; (ii) no distributions shall be made under the Plan on account of any Claim held by either of the Debtors against any other Debtor; (iii) all guarantees of either Debtor of the obligations of the other Debtor shall be eliminated; and (iv) each and every Claim and Proof of Claim against either of the Debtors shall be deemed one Claim or Proof of Claim against both of the Debtors and a single obligation of the consolidated Debtors as Reorganized Debtor on and after the Effective Date. Notwithstanding the foregoing, the substantive consolidation effected pursuant hereto shall not affect or limit in any manner whatsoever (a) defenses to any Cause of Action; (b) requirements for any third party to establish mutuality in order to assert a right of setoff; (c) any perfection of Lien issues, including rights to avoid Liens pursuant to Section 544 of the Bankruptcy Code or applicable state law; (d) valuation of any Secured Claims, including rights to challenge or object to alleged Secured Claims for any reason, including valuation issues under Section 506 of the Bankruptcy Code; or (e) any rights to challenge and object to any Claims that are Disputed Claims for any reason whatsoever, including any alleged Secured Claims.

6.2      **Source of Cash for Distributions.**

      Allowed Administrative Claims for professional compensation and expenses awarded under 11 U.S.C. § 327 or 330 shall be paid first from any retainers provided or reserves established as contemplated under orders entered in the Chapter 11 Cases and, to the extent any deficiencies remain, from cash on hand and/or earnings of the Reorganized Debtor.   All other Payments to Holders of Allowed Claims or Interests shall be paid from cash on hand and/or earnings of the Reorganized Debtor.   Except as otherwise provided in the Plan, no Claims shall bear interest from and after the Petition Date.

6.3      **Post-Confirmation Working Capital.**

      It is contemplated that any working capital required will be provided from the Reorganized Debtor's operations following the Effective Date.

6.4      **Corporate Existence.**

      The Reorganized Debtor shall continue to exist after the Effective Date as a Georgia limited liability company, with all the powers thereof under applicable law and without prejudice to any

right to alter or terminate such existence (whether by merger or otherwise) under applicable state law.

6.5 **Corporate Charter.**

On the Effective Date, the Reorganized Debtor's Operating Agreement shall be deemed amended to prohibit the issuance of non-voting equity securities to the extent and for any length of time required by Section 1123(a) of the Bankruptcy Code. After the Effective Date, the Reorganized Debtor may amend and restate its Operating Agreement or By-Laws as permitted by Georgia law.

6.6 **Vesting of the Debtors' Assets.**

Confirmation of this Plan shall automatically vest in the Reorganized Debtor (without the necessity of executing any instruments of assignment) all of the properties to be Retained by the Reorganized Debtor under the Plan, free and clear of all liens, claims, encumbrances, penalties, assessments and other interests, except as may otherwise be specifically set forth in this Plan or in the Confirmation Order.

6.7 **Administration of Claims.**

Pursuant to the Bar Date Order, the Court established March 31, 2021 as the Bar Date by which all proofs of claim and proofs of interest were required to be filed by non-governmental units and April 11, 2021 as the Bar Date by which all proofs of claim and proofs of interest were required to be filed by governmental units in these Cases. Subsequent to the Effective Date, the Reorganized Debtor shall continue the process of reviewing the filed proofs of claim and auditing these Claims with regard to (i) the supporting documents evidencing the Claims; (ii) the appropriateness of the characterization of each Claim; (iii) the amount of the Claim as set forth in the proof of claim; (iv) the extent to which the Debtors originally Scheduled the Claim as contingent, disputed or unliquidated; and (v) whether the proof of claim is otherwise valid, permissible, due and payable under the Bankruptcy Code and applicable state law. Following the Confirmation Date, the Reorganized Debtor shall complete its review of the Claims and shall initiate, file and prosecute any and all actions as it deems necessary and appropriate to dispute, disallow, object to or otherwise quantify the Claims against the Estate. All Claims Litigation, including actions that arise out of the amount of a submitted Claim, or any objection to a submitted Claim, shall vest with the Estate and shall be prosecuted by the Reorganized Debtor. The Reorganized Debtor shall take actions regarding the administration, reconciliation and settlement of Claims, and shall object to Claims and prosecute Claims actions, until such time as the Reorganized Debtor determines that further pursuit of litigation or actions objecting to Claims is no longer cost efficient, and will be of no further benefit to the Estate and its creditors. **THE FAILURE TO OBJECT TO ANY CLAIM PRIOR TO THE COMMENCEMENT OF THE HEARING ON CONFIRMATION OF THE PLAN SHALL NOT BE DEEMED TO BE A WAIVER OF THE RIGHT TO OBJECT THEREAFTER TO SUCH CLAIM IN WHOLE OR IN PART FOR THE PURPOSE OF DISTRIBUTION.**

6.8    **Preservation of Rights of Action.**

Except as otherwise expressly provided herein, any rights or causes of action accruing to or held by the Debtors or their Estates, including, without limitation, all Causes of Actions, shall remain assets of, and vest in, the Reorganized Debtor.   The Reorganized Debtor may pursue those rights of action, as it deems to be appropriate and in the best interest of the Reorganized Debtor. **ALL CAUSES OF ACTIONS SHALL SURVIVE CONFIRMATION, AND THE ASSERTION OF CAUSES OF ACTION SHALL NOT BE BARRED OR LIMITED BY ANY ESTOPPEL, WHETHER JUDICIAL, EQUITABLE OR OTHERWISE**.   The Reorganized Debtor shall have the authority to compromise and settle any Cause of Action on such terms as the Reorganized Debtor deems appropriate and in the best interests of the Estate.

6.9    **Duties and Powers of Reorganized Debtor.**

The Reorganized Debtor shall have the rights, powers and duties as set forth in the Plan and shall be responsible for administering the Estate and consummating the Plan under the terms and subject to the conditions set forth herein.   On and after the Effective Date, the Reorganized Debtor may operate its business, incur debt and use, acquire and dispose of property without supervision or approval of the Bankruptcy Court, except as expressly provided in the Plan. Additionally, the Reorganized Debtor shall be authorized to take the necessary and appropriate actions to proceed with an orderly, expeditious and efficient administration of the Estate in accordance with the Plan.   Following Confirmation of the Plan, the Reorganized Debtor shall be authorized to retain or engage (or continue the retention or engagement of) such employees, professional persons and agents as are appropriate or desirable to administer the Estate and consummate the Plan.   Jeffrey R. Landau shall serve as the initial officer and manager of the Reorganized Debtor upon confirmation of the Plan.   All expenses incurred after the Confirmation Date in connection with the administration of the Estate and the operation of the Reorganized Debtor's business, including, without limitation, professional fees, may be paid by the Reorganized Debtor without the necessity of providing any notice or seeking or obtaining any approval of the Court with respect to such payments.   All payments made under the Plan will be made by the Reorganized Debtor, who will bear the responsibility for determining the appropriate amounts of Distributions and sending such Distributions to the appropriate Holders of Allowed Claims.

## ARTICLE VII
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS
## AND ACCOUNTS RECEIVABLE

Notwithstanding any other provisions of the Plan, no payments or Distribution shall be made on account of a Disputed Claim until such Claim becomes an Allowed Claim.   In lieu of Distributions under the Plan to holders of Disputed Claims, a Disputed Claims reserve shall be maintained by the Reorganized Debtor for payment of any Disputed Claim which becomes an Allowed Claim.   Distributions on account of any Disputed Claim that has become an Allowed Claim shall be made within the time periods provided above in Article V, or as soon as is reasonably practicable following allowance of the Claim.

Subsequent to the Effective Date, the Reorganized Debtor shall have the authority to settle and resolve any Disputed Claim that was originally asserted in an amount equal to or less than Twenty-Five Thousand Dollars ($25,000.00) upon such terms and conditions as the Reorganized Debtor deems appropriate and in the best interests of the Estate. Any such compromise and settlement shall be deemed final and binding upon all parties in interest in the Case. The Reorganized Debtor shall not have any obligation to provide notice to or file and serve pleadings upon any such parties in interest, and shall not have any requirement to obtain Court approval, in connection with compromising these Claims.

With respect to any Disputed Claim that was originally asserted in an amount that exceeds Twenty-Five Thousand Dollars ($25,000.00), the Reorganized Debtor shall have the authority to compromise and settle any such Claim on such terms as the Reorganized Debtor deems appropriate and in the best interests of the Estate, subject to providing Designated Notice of any such proposed compromise and a reasonable opportunity to object thereto. If a party in interest files a written objection with the Court in the Case with respect to any proposed compromise of any Disputed Claim, and serves a copy of said objection upon the Reorganized Debtor and its counsel, within ten (10) days from the service of Designated Notice of the proposed compromise, then the Court shall schedule a hearing with respect to said objection. If no objection is timely filed and served, the Reorganized Debtor may compromise and settle any Disputed Claim without further authorization. The Reorganized Debtor may file motions which seek to compromise more than one Claim.

## ARTICLE VIII
## PROVISIONS REGARDING DISTRIBUTIONS

8.1    **Interest on Claims.**

Except as provided in a Final Order entered in this Case, (a) no holder of any Unsecured Claim (except Priority Tax Claims) shall be entitled to interest accruing on or after the Petition Date on such Claim, and (b) interest shall not accrue or be paid upon any Disputed Claim with respect to the period from the Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim, or any part thereof, becomes an Allowed Claim.

8.2    **Means of Payment.**

All payments made pursuant to this Plan shall be in Cash and by any means reasonably selected by the Reorganized Debtor, including check or wire transfer.

8.3    **Rounding.**

Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down to the nearest whole cent.

8.4  **Withholding Taxes.**

The Reorganized Debtor shall be entitled to deduct any federal or state withholding taxes from any Distributions made with respect to Allowed Claims, as appropriate, and shall otherwise comply with Section 346 of the Bankruptcy Code.  Notwithstanding anything to the contrary herein, the Reorganized Debtor shall not be obligated to make any Distribution to any creditor that has not provided tax identification information requested by the Reorganized Debtor if such information is required to make a Distribution without withholding taxes from such creditor's Distribution.  Holders of Allowed Claims that have not provided tax identification information will be solicited for such information on or before any Distribution Date and included in the Distribution or in a subsequent Distribution once tax identification information is received from the holder.  If the Holder of an Allowed Claim fails to provide such tax information within thirty (30) days of the Final Distribution, any distributions which would otherwise be payable to such holder shall be deemed unclaimed property.

8.5  **Unclaimed Property.**

"Unclaimed Property" means any funds payable to holders of Claims which are unclaimed. Unclaimed Property shall include (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address, (b) funds for checks which have not been presented and paid within ninety (90) days of their issuance, (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address to mail or deliver such property, and (d) checks (and the funds represented thereby) which were not mailed or delivered because the holder of such Claims failed to provide appropriate tax information if such information is required to make a Distribution without withholding taxes from such creditor's Distribution.  Unclaimed Property shall be held in an "Unpaid Claims Reserve" to be held for the benefit of the holders of Allowed Claims entitled thereto under the terms of the Plan.  For a period of 120 days following the first Distribution to Holders of Allowed Claims (said period being hereinafter referred to as the "**Claiming Period**"), Unclaimed Property shall be held in the Unpaid Claims Reserve solely for the benefit of the Holders of Allowed Claims which have failed to claim such property.  During the Claiming Period, Unclaimed Property due the Holder of an Allowed Claim shall be released from the Unpaid Claims Reserve and delivered to such holder upon presentation of proper proof by such holder of its entitlement thereto.  In the event that there is Unclaimed Property in the Unpaid Claims Reserve with regard to any Claim, the Reorganized Debtor shall, until such Unclaimed Property is claimed or the Claiming Period with regard to the holder of such Claim has expired, make all subsequent Distributions due with regard to such Claim to the Unpaid Claims Reserve.  After the Claiming Period with regard to such holder has expired, no subsequent Distributions shall be made on account of such Claim, and such Claim shall be treated as being disallowed, waived, and satisfied.  At the end of the Claiming Period, the Holder of an Allowed Claim theretofore entitled to Unclaimed Property shall cease to be entitled thereto and the Unclaimed Property shall be released to the Reorganized Debtor.    The Unpaid Claims Reserve may be (but shall not be required to be) maintained as an interest-bearing account.  All interest earned thereon shall belong to the Reorganized Debtor, and no claimant entitled to funds

- 21 -

from the Unpaid Claims Reserve shall be entitled to interest with regard to the amounts due to such claimant.

## ARTICLE IX
## BALLOTS

Any ballot which is executed by the holder of any Allowed Claim or Allowed Interest but does not indicate acceptance or rejection of the Plan shall be deemed to have accepted the Plan. Any other ballot not filed in accordance with the filing instructions on the ballot pertaining to this Plan shall not be counted for voting purposes.

## ARTICLE X
## EXECUTORY CONTRACTS AND LEASES

### 10.1    Assumption of Lease with Landlord

VH Restaurant and the Landlord are parties to a Lease for space in which the Debtors operate a Hudson Grille restaurant and sports bar. As of the Effective Date, the Lease shall be deemed assumed and assigned to the Reorganized Debtor pursuant to sections 105, 365 and 1123 of the Bankruptcy Code. According to the Debtors' books and records, the payments and other obligations owed by VH Restaurant under the Lease which have become due and owing have been paid or performed in the ordinary course of business or have been funded into an escrow account being held by Calloway Title and Escrow. Upon assumption of the Lease, the Debtors propose to pay the Landlord the $167,829.60 (plus interest, if any) held in escrow in full and final satisfaction of any and all amounts required to cure defaults under the Lease. Any dispute as to the calculation of amounts required to cure defaults under the Lease shall be heard and determined by the Court at the hearing to consider confirmation of the Plan. Assumption of the Lease is a condition precedent to confirmation of the Plan.

### 10.2    All Other Executory Contracts and Unexpired Leases.

Any executory contract or unexpired lease to which the Debtors were a party that has not been assumed or rejected by the Debtors pursuant to a Final Order of the Court as of the Effective Date (unless a motion to assume or reject such executory contract or unexpired lease is pending as of the Effective Date) shall be deemed rejected by the Debtors on the Effective Date. Notwithstanding anything to the contrary herein or in the Disclosure Statement, all insurance policies in force as of the Effective Date shall remain in effect following the Effective Date unless and until rejected by separate motion and/or terminated in accordance with their terms.

### 10.3    Rejection Damage Claims.

Claims arising from the rejection of any executory contracts or unexpired leases shall be filed within thirty (30) days following the rejection and shall be treated as Class 5 Claims to the extent Allowed. Any person seeking to assert such a Claim who fails to file a proof of claim within this thirty (30) day period shall be deemed to have waived said Claim, and it shall be forever barred from asserting a Claim based on such rejection

**ARTICLE XI**
**MODIFICATION OF THE PLAN**

The Debtors reserves the right, pursuant to Section 1127(a) of the Bankruptcy Code, to amend or modify the Plan prior to the Confirmation of the Plan. The Plan may be modified, without notice or hearing, or on such notice and hearing as the Court deems appropriate, if the Court finds that the proposed modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard to the proposed modification. Without limiting the foregoing, the Plan otherwise may be modified after notice and hearing. In the event of modification at or before Confirmation, any votes in favor of the Plan shall be deemed to be votes in favor of the Plan as modified, unless the Court finds that the proposed modification materially and adversely affects the rights of the parties in interest that cast such votes. After Confirmation of the Plan, the Reorganized Debtor reserves the right to modify the Plan as allowed by Section 1127(b) of the Bankruptcy Code, and applicable law.

**ARTICLE XII**
**RETENTION OF JURISDICTION**

The Bankruptcy Court shall retain jurisdiction, notwithstanding entry of the Confirmation Order and notwithstanding the occurrence of the Effective Date of the Plan, for the following purposes:

a)      to enforce all Causes of Action which exist on behalf of the Reorganized Debtor pursuant to the provisions of this Plan or applicable law;

b)      to enter orders and injunctions and restraints to enforce the provisions of the Plan;

c)      to determine Claims asserted under Section 507(a)(2) of the Bankruptcy Code, including claims for compensation and reimbursement of expenses accruing prior to the Confirmation Date;

d)      to determine any Disputed Claims or disputes concerning the validity of or the market value of any collateral underlying any Secured Claim;

e)      to enter orders regarding interpretation of the Plan, or any document created in connection with the Plan;

f)      to conduct hearings and to enter orders modifying the Plan as provided herein or in the Bankruptcy Code;

g)      to determine any and all applications, Claims, adversary proceedings, contested or litigated matters pending on the Confirmation Date or filed prior to entry of a Final Decree;

- 23 -

h)      to determine any motions for rejection or assumption of executory contracts or unexpired leases, and to determine Claims resulting from rejection of executory contracts and unexpired leases;

i)      to allow, disallow, and estimate, liquidate, or determine any Claims against the Debtors, including Claims for tax liability, but excluding any Claims deemed allowed by this Plan, and to enter or enforce any order requiring the filing of any such Claim before a particular date; and

j)      to enter orders required for the administration of the Plan, including, but not limited to:

  (i)     resolution of disputes pertaining to the amounts of payments under the Plan to Creditors;

  (ii)    conducting post-confirmation valuation hearings as required by the Plan or authorized by the Bankruptcy Code; and

  (iii)   exercising jurisdiction over any other matter provided for or consistent with the provisions of Chapter 11 of the Bankruptcy Code.

## ARTICLE XIII
### DISCHARGE, RELEASE, LIMITATION
### OF LIABILITY, AND GENERAL INJUNCTION

13.1    **General Injunction.**

PURSUANT TO SECTIONS 105, 1123, 1129 AND 1141 OF THE BANKRUPTCY CODE, IN ORDER TO PRESERVE AND IMPLEMENT THE VARIOUS TRANSACTIONS CONTEMPLATED BY AND PROVIDED FOR IN THE PLAN, AS OF THE EFFECTIVE DATE AND THROUGH THE CONSUMMATION DATE, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR IN THE CONFIRMATION ORDER, ALL PERSONS OR ENTITIES THAT HAVE HELD, CURRENTLY HOLD OR MAY HOLD A CLAIM, DEBT, OR LIABILITY AGAINST THE DEBTORS, THE ESTATES OR ANY OF THEIR RESPECTIVE PROPERTY, ARE AND SHALL BE ENJOINED AND BARRED TO THE FULLEST EXTENT PERMITTED BY LAW FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF ANY SUCH CLAIMS, DEBTS, OR LIABILITIES, OTHER THAN ACTIONS BROUGHT TO ENFORCE ANY RIGHTS OR OBLIGATIONS UNDER THE PLAN OR THE PLAN DOCUMENTS:  (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING AGAINST THE REORGANIZED DEBTOR, THE DEBTORS, THEIR ESTATES, OR THEIR RESPECTIVE PROPERTY; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE REORGANIZED DEBTOR, THE

**DEBTORS, THEIR ESTATES, OR THEIR RESPECTIVE PROPERTY; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST THE REORGANIZED DEBTOR, THE DEBTORS, THEIR ESTATES, OR THEIR RESPECTIVE PROPERTY; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO THE REORGANIZED DEBTOR, THE DEBTORS, THEIR ESTATES, OR THEIR RESPECTIVE PROPERTY; (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN OR THE CONFIRMATION ORDER; OR (F) INTERFERING WITH OR IN ANY MANNER WHATSOEVER DISTURBING THE RIGHTS AND REMEDIES OF THE REORGANIZED DEBTOR, THE DEBTORS, THEIR ESTATES, OR THEIR RESPECTIVE PROPERTY UNDER THE PLAN AND THE PLAN DOCUMENTS AND THE OTHER DOCUMENTS EXECUTED IN CONNECTION THEREWITH. THIS GENERAL INJUNCTION PROVISION IS AN INTEGRAL PART OF THE PLAN AND IS ESSENTIAL TO ITS IMPLEMENTATION. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, THE PROVISIONS OF THIS § 13.1 SHALL NOT RELEASE, OR BE DEEMED A RELEASE OF, ANY OF THE CAUSES OF ACTION**.

13.2    **Exculpation from Liability**.

**THE DEBTORS, THEIR CURRENT OFFICERS, AND THEIR PROFESSIONALS (ACTING IN SUCH CAPACITY), (COLLECTIVELY, THE "EXCULPATED PARTIES") SHALL NEITHER HAVE NOR INCUR ANY LIABILITY WHATSOEVER TO ANY PERSON OR ENTITY FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN GOOD FAITH IN CONNECTION WITH OR RELATED TO THE FORMULATION, PREPARATION, DISSEMINATION, OR CONFIRMATION OF THE PLAN, THE DISCLOSURE STATEMENT, ANY PLAN DOCUMENT, OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO, OR ANY OTHER ACT TAKEN OR OMITTED TO BE TAKEN, IN CONNECTION WITH THE PLAN OR THE CASE, IN EACH CASE FOR THE PERIOD ON AND AFTER THE PETITION DATE AND THROUGH THE EFFECTIVE DATE; PROVIDED, HOWEVER, THAT THIS EXCULPATION FROM LIABILITY PROVISION SHALL NOT BE APPLICABLE TO ANY LIABILITY FOUND BY A COURT OF COMPETENT JURISDICTION TO HAVE RESULTED FROM FRAUD OR THE WILLFUL MISCONDUCT OR GROSS NEGLIGENCE OF ANY SUCH PARTY. THE RIGHTS GRANTED UNDER THIS § 13.2 ARE CUMULATIVE WITH (AND NOT RESTRICTIVE OF) ANY AND ALL RIGHTS, REMEDIES, AND BENEFITS THAT THE EXCULPATED PARTIES HAVE OR OBTAIN PURSUANT TO ANY PROVISION OF THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW.  IN FURTHERANCE OF THE FOREGOING, THE EXCULPATED PARTIES SHALL HAVE THE FULLEST PROTECTION AFFORDED UNDER SECTION 1125(E) OF THE BANKRUPTCY CODE AND ALL APPLICABLE LAW FROM LIABILITY FOR VIOLATION OF ANY APPLICABLE LAW, RULE OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCE OR REJECTION OF A PLAN OR THE OFFER, ISSUANCE, SALE OR**

PURCHASE OF SECURITIES.    THIS EXCULPATION FROM LIABILITY PROVISION IS AN INTEGRAL PART OF THE PLAN AND IS ESSENTIAL TO ITS IMPLEMENTATION.    NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, THE PROVISIONS OF THIS § 13.2 SHALL NOT RELEASE, OR BE DEEMED A RELEASE OF, ANY OF THE CAUSES OF ACTION.

13.3    **Release of Exculpated Parties**.

ON THE EFFECTIVE DATE, THE EXCULPATED PARTIES SHALL BE UNCONDITIONALLY AND ARE HEREBY DEEMED TO BE UNCONDITIONALLY RELEASED FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, LOSSES, RIGHTS, REMEDIES, CAUSES OF ACTION, CHARGES, COSTS, DEBTS, INDEBTEDNESS, OR LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE TAKING PLACE BETWEEN THE PETITION DATE AND THE EFFECTIVE DATE, WHICH IS IN ANY WAY RELATING TO THE DEBTORS, THE CASE, ANY PROPERTY OF THE DEBTORS, THE BUSINESS OR OPERATIONS OF THE DEBTORS, ANY PLAN DOCUMENTS, THE PLAN, OR ANY OF THE TRANSACTIONS CONTEMPLATED THEREBY; PROVIDED, HOWEVER, THAT THIS RELEASE PROVISION SHALL NOT BE APPLICABLE TO ANY LIABILITY FOUND BY A COURT OF COMPETENT JURISDICTION TO HAVE RESULTED FROM FRAUD OR THE WILLFUL MISCONDUCT OR GROSS NEGLIGENCE OF ANY SUCH EXCULPATED PARTY. THE CONFIRMATION ORDER SHALL ENJOIN THE PROSECUTION BY ANY PERSON OR ENTITY, WHETHER DIRECTLY, DERIVATIVELY OR OTHERWISE, OF ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, LOSS, RIGHT, REMEDY, CAUSE OF ACTION, CHARGE, COST, DEBT, INDEBTEDNESS, OR LIABILITY WHICH AROSE OR ACCRUED DURING SUCH PERIOD OR WAS OR COULD HAVE BEEN ASSERTED AGAINST ANY OF THE EXCULPATED PARTIES, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR IN THE CONFIRMATION ORDER. EACH OF THE EXCULPATED PARTIES SHALL HAVE THE RIGHT TO INDEPENDENTLY SEEK ENFORCEMENT OF THIS RELEASE PROVISION.    THIS RELEASE PROVISION IS AN INTEGRAL PART OF THE PLAN AND IS ESSENTIAL TO ITS IMPLEMENTATION.    NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, THE PROVISIONS OF THIS § 13.3 SHALL NOT RELEASE, OR BE DEEMED A RELEASE OF, ANY OF THE CAUSES OF ACTION

13.4    **Barton Doctrine.**

The "Barton Doctrine," *e.g. Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881) (Supreme Court held that a trustee cannot be sued without leave of the bankruptcy court), which prohibits a party from suing either a trustee, the officers of a debtor in possession, or their attorneys, in a non-appointing court for acts done in their official capacity, shall pertain to the provisions of this Article XIII, and shall stand as one of the bases for enforcement of the provisions herein. *See,*

*e.g., Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000)(" [j]oining the other circuits that have considered this issue, we hold that a debtor must obtain leave of the bankruptcy court before initiating an action in district court when that action is against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity"); *Patco Energy Express v. Lambros*, 2009 U.S. App. LEXIS 25771 (11th Cir. 2009) ("[w]here a plaintiff neglects to obtain leave from the appointing court, a suit filed [against a bankruptcy trustee] in another court must be dismissed for lack of subject matter jurisdiction"); *In the Matter of Linton*, 136 F.3d 544, 545 (7th Cir. 1998); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240-41 (6th Cir. 1993) ("[i]t is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action in a nonappointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court .... counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee"); *In re Balboa Improvements, Ltd.*, 99 B.R. 966, 970 (9th Cir. BAP 1989) (holding that permission to sue debtor's attorney for alleged misconduct in the administration of an estate must be obtained from the bankruptcy court.

13.5    **Continuation of Automatic Stay.**

The automatic stay arising out of Section 362(a) of the Bankruptcy Code shall continue in full force and effect until the Consummation Date and the Reorganized Debtor and its Estate shall be entitled to all of the protections afforded thereby.   The Court shall have the power to grant such additional and supplemental stays as may be necessary or appropriate to protect and preserve the assets of the Reorganized Debtor and/or the Estate or to permit the just and orderly administration of the Estate.   All assets of the Estate shall remain Property of the Estate until distributed in accordance with this Plan, and no entity shall at any time have any claim to or interest in any asset of the Estate except to the extent that such entity is the holder of an Allowed Claim entitled to Distributions under this Plan.

13.6    **No Liability for Tax Claims.**

Unless a taxing Governmental Authority has asserted a Claim against the Debtors before the Bar Date or Administrative Expense Claim Bar Date established therefore, no Claim of such Governmental Authority shall be Allowed against the   Debtors, the Estate, the Reorganized Debtor, or their directors, officers, employees or agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtors, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period, or (ii) an audit of any return for a period before the Petition Date.   The entry of the Confirmation Order shall be deemed to be a determination that no provision of the Plan has avoidance of taxes as a principal purpose, and the Confirmation Order shall so provide.

13.7    **Regulatory or Enforcement Actions.**

Nothing in this Plan shall restrict any federal government regulatory agency from pursuing any regulatory or police enforcement action or performing its statutory duties against any Person or Entity in any forum, but only to the extent not prohibited by the automatic stay of Section 362

of the Bankruptcy Code or discharged or enjoined pursuant to Section 524 or 1141(d) of the Bankruptcy Code.  Nothing contained in this Article XIII, Section 13.7 is intended to, nor shall it, supersede or alter any applicable provisions of the Bankruptcy Code.

**13.8** __No Liability for Untimely Administrative Expense Claims.__

Holders of Administrative Expense Claims (including Holders of any Claims for Postpetition federal, state or local taxes) that do not file an application or other Bankruptcy Court-approved pleading by the Administrative Expense Claims Bar Date will be forever barred from asserting such Administrative Expense Claims against the Debtors, the Reorganized Debtor, the Estate, or any of their respective Property.

## ARTICLE XIV
## CONDITIONS PRECEDENT TO CONFIRMATION

**14.1** __Condition Precedent to Confirmation of the Plan.__

Entry of the Confirmation Order, effectiveness of Confirmation of the Plan, and the obligation of the Debtors to consummate this Plan are conditioned upon the Bankruptcy Court having made findings and determinations regarding the Plan as will enable the entry of the Confirmation Order in a manner consistent with the provisions of the Plan and in form and substance satisfactory to the Debtors.  For the avoidance of doubt, entry of an order authorizing assumption of the Lease and establishing any cure costs due in connection therewith is a condition to Confirmation of the Plan.

**14.2** __Condition Precedent to Effective Date__.

The Effective Date will not occur and the Plan will not be consummated unless and until the Confirmation Order: (a) has been signed by the Bankruptcy Court and duly entered on the docket for the Cases by the clerk of the Bankruptcy Court in form and substance acceptable to the Debtors; (b) has not have been reversed, modified or amended in any material respects prior to the Effective Date without the written consent of the Debtors, (c) authorizes and directs the Reorganized Debtor to take, or cause to be taken, all such actions as are necessary to enable the Reorganized Debtor to implement the provisions of the Plan, (d) authorizes and directs the Reorganized Debtor to perform its obligations under the Plan, and to take all actions and execute all documents and instruments reasonably necessary to consummate the transactions contemplated by the Plan, (e) provides that that no holder of a Claim, Lien or Interest will be permitted to execute against or receive Distributions from the Debtors except in accordance with the express provisions of the Plan and (f) has become a Final Order.  Additionally, an order authorizing assumption of the Lease must have been signed by the Bankruptcy Court and duly entered on the docket for the Cases by the clerk of the Bankruptcy Court in form and substance acceptable to the Debtors.

14.3    **Waiver of Conditions Precedent.**

The Debtors may elect to waive any condition precedent set forth above.

## ARTICLE XV
## ACCEPTANCE OR REJECTION OF THE PLAN

15.1    **Classes Entitled to Vote.**

Holders of Allowed Claims in each impaired Class shall be entitled to vote to accept or reject the Plan. Each unimpaired Class of Claims shall be deemed to have accepted the Plan, and Holder of Claims in such Classes shall not be entitled to vote to accept or reject the Plan.

15.2    **Class Acceptance Requirement.**

Under Section 1126(c) of the Bankruptcy Code, an impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class who have voted on the Plan have voted to accept the Plan.

15.3    **Cramdown.**

The Debtors hereby request confirmation pursuant to the "cramdown" provisions of Section 1129(b) of the Bankruptcy Code with respect to any impaired Class that votes to reject the Plan.

15.4    **Claim Designation.**

The Debtors reserve the right to seek to designate, pursuant to Section 1126(e) of the Bankruptcy Code, any Holder of any Claim whose vote on the Plan was submitted for an improper purpose or was otherwise not submitted in good faith.

## ARTICLE XVI
## MISCELLANEOUS

16.1    **Objections to Claims.**

The Reorganized Debtor shall have one hundred twenty (120) days after the Confirmation Date to object to any scheduled Claim, Proof of Claim or Equity Interest filed in the Case.  The Reorganized Debtor shall have the right to seek extensions of this period following Designated Notice.  If a party in interest files a written objection with the Court in the Case with respect to any proposed extension of time and serves a copy of said objection upon the Reorganized Debtor and its counsel within ten (10) days from the service of Designated Notice of the proposed extension, then the Court shall schedule a hearing with respect to said objection and the deadline for the Reorganized Debtor to object to Claims or Equity Interests shall be deemed extended

through the conclusion of such hearing.   If no objection is timely filed and served, the proposed extension is granted without further authorization.   The failure to object to any Claim or Equity Interest prior to the commencement of the hearing on Confirmation of the Plan shall not be deemed to be a waiver of the right to object thereafter to such Claim in whole or in part for the purpose of distribution.

16.2    **Compliance with Tax and Securities Law Requirements.**

In connection with the Plan, the Reorganized Debtor will comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.   The effectuation of this Plan shall be subject to compliance with all applicable state and federal securities laws.

16.3    **Further Actions.**

Pursuant to Bankruptcy Code Section 1142(b), the Confirmation Order shall act and operate as an order of the Court directing the Reorganized Debtor and any other necessary parties to execute and deliver or join in the execution and delivery of any instrument required to effect any transfer and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of this Plan.   Any transfer taxes arising from transfers of property ordered or made pursuant to this Plan shall be treated in accordance with Section 1146 of the Bankruptcy Code.

16.4    **U.S. Trustee's Fees.**

All fees due and owing under 28 U.S.C. § 1930 for periods prior to the Confirmation Date shall be paid on or before the Effective Date.   Following confirmation of the Plan, the Reorganized Debtor shall continue to pay timely all Chapter 11 quarterly fees as required by 28 U.S.C. § 1930(a)(6), until a final decree is entered or the case is otherwise closed.

16.5    **Governing Law.**

Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or to the extent that the Plan or the provision of any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan provides otherwise, the rights and obligations arising under the Plan will be governed by, construed, and enforced in accordance with the laws of the State of Georgia, without giving effect to the principles of conflicts of law thereof.

16.6    **Severability.**

Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

16.7    **Revocation.**

The Debtors reserve the right to revoke and withdraw this Plan prior to Confirmation.

16.8    **Effect of Withdrawal or Revocation.**

If the Debtors revoke or withdraw this Plan prior to Confirmation, then this Plan shall be deemed null and void.

16.9    **Retiree Benefits.**

Following the Effective Date, the Debtors shall continue payment of any retiree benefits for the duration of the period the Debtors have obligated themselves to provide such benefits, if any, to the extent required by Sections 1114 and 1129(a)(13) of the Bankruptcy Code.

16.10    **Closing the Case.**

Upon the completion of all matters over which the Bankruptcy Court is to retain jurisdiction pursuant to the provisions of this Plan, the Chapter 11 case may be administratively closed; provided, however, that any Creditor or the Reorganized Debtor may petition to reopen the case at any time within the seven (7) year period immediately following the Effective Date of the Plan for the purpose of having the Bankruptcy Court interpret any provision of the Plan or enforce the rights of any party under the Plan or under the Bankruptcy Code.

16.11    **Headings.**

Headings are utilized in this Plan for the convenience of reference only, and shall not constitute a part of this Plan for any other purpose.

16.12    **Extensions of Time.**

The time for the Reorganized Debtor to take any action under this Plan may be extended by the Bankruptcy Court after notice and a hearing.

16.13    **Designated Notice.**

Notwithstanding any other provision of this Plan, when notice and a hearing is required with regard to any action to be taken by the Debtors or the Reorganized Debtor, Designated Notice shall be sufficient.  With respect to any proposed action to be taken as authorized under this Plan which may only be taken following Designated Notice, the following procedures shall apply. After Designated Notice of the proposed action has been provided as required under the Plan, if any party in interest files with the Court within ten (10) days of the service of such Designated Notice a written objection to the proposed action, and serves a copy of said objection upon the Reorganized Debtor and its counsel, then the Court shall schedule a hearing with respect to such objection and, unless the objection is withdrawn by agreement of the parties, the proposed action

may only be taken if approved by Final Order of the Court.  If no objection is timely filed and served, the proposed action may be taken without further authorization or approval by the Court.

### ARTICLE XVI
### REQUEST FOR CONFIRMATION

The Debtors, as proponents of this Plan, request Confirmation of the Plan in accordance with Section 1129(a) of the Bankruptcy Code or, if any impaired class fails to accept the Plan, the Debtors reserve the right to request Confirmation in accordance with Section 1129(b) of the Bankruptcy Code.

This ___ day of April, 2021.

**VIRGINIA-HIGHLAND RESTAURANT, LLC**

By: Jeffrey R. Landau
Its:  Authorized Officer

**RESTAURANT 104 LLC**

By: Jeffrey R. Landau
Its:  Authorized Officer

J. ROBERT WILLIAMSON
Georgia Bar No. 765214
ASHLEY REYNOLDS RAY
Georgia Bar No. 601559
SCROGGINS & WILLIAMSON, P.C.
4401 Northside Parkway
Suite 450
Atlanta, Georgia 30327
T:  (404) 893-3880
F:  (404) 893-3880
E:  rwilliamson@swlawfirm.com
     aray@swlawfirm.com

*Counsel for Virginia-Highland Restaurant, LLC and Restaurant 104 LLC*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a true and correct copy of the attached

**DEBTORS' PLAN OF REORGANIZATION** by causing it to be deposited in the United States Mail in

a properly addressed envelope with adequate postage affixed thereon to the following:

Office of the United States Trustee
Suite 362, Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, GA   30303

and by the Court's CM/ECF system on all counsel of record registered in this case through
CM/ECF.

This 9th day of April, 2021.

Respectfully submitted,

SCROGGINS & WILLIAMSON, P.C.


   /s/ Ashley Reynolds Ray
J. ROBERT WILLIAMSON
Georgia Bar No. 765214
ASHLEY REYNOLDS RAY
Georgia Bar No. 601559

4401 Northside Parkway
Suite 450
Atlanta, GA 30327
T:  (404) 893-3880
F:  (404) 893-3880
E:  rwilliamson@swlawfirm.com
     aray@swlawfirm.com

*Counsel for Virginia-Highland Restaurant,*
*LLC and Restaurant 104 LLC*

- 34 -