## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| VIRGINIA-HIGHLAND RESTAURANT, | ) | Jointly Administered Under |
| LLC and RESTAURANT 104 LLC, | ) | CASE NO. 20-70718-bem |
| | ) | |
| Debtors. | ) | |

_____

## DISCLOSURE STATEMENT TO ACCOMPANY
## DEBTORS' PLAN OF REORGANIZATION

_____

**SCROGGINS & WILLIAMSON, P.C.**

**J. Robert Williamson**
**Georgia Bar No. 765214**
**Ashley Reynolds Ray**
**Georgia Bar No. 601559**
**4401 Northside Parkway**
**Suite 450**
**Atlanta, GA 30327**
**(404) 893-3880**

**ATTORNEYS FOR VIRGINIA-HIGHLAND RESTAURANT, LLC AND RESTAURANT
104 LLC, DEBTORS AND DEBTORS-IN-POSSESSION**

**Dated: April 9, 2021**

# ARTICLE I
# INTRODUCTION

This disclosure statement ("**Disclosure Statement**") is submitted by Virginia-Highland Restaurant, LLC ("**VH Restaurant**") and Restaurant 104 LLC ("**Restaurant 104**"), debtors and debtors-in-possession in the above-styled jointly administered Chapter 11 case (collectively, the "**Debtors**"), to provide information to all of its known Creditors and Equity Interest Holders about the Chapter 11 Plan of Reorganization ("**Plan**") filed by the Debtors.   The purpose of the Disclosure Statement is to provide information of a kind and in detail sufficient to enable Creditors and Interest Holders in certain impaired Classes to make an informed judgment regarding whether to accept or reject the Plan and to inform Holders of Claims and Interests in the unimpaired Classes of their treatment under the Plan.

Debtors believe that the Plan provides Creditors with the greatest possible value that can be realized on their respective claims and that the Plan is in the best interests of all Creditors.   If the Plan is not confirmed by the Bankruptcy Court, the Debtors may be forced to convert this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.   The Debtors believe that, in the event the case was converted to Chapter 7 of the Bankruptcy Code, Creditors would receive substantially smaller distributions than are provided for in the Plan.   Consequently, Debtors seek confirmation of the Plan and urge all Creditors and Interest Holders to vote to accept the Plan.

Unless otherwise defined herein, capitalized terms used herein shall have the same meaning ascribed to them in the Plan.

## 1.1    Disclaimer

**ALL CREDITORS AND INTEREST HOLDERS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY.    PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, THE EXHIBITS AND THE DISCLOSURE STATEMENT AS A WHOLE.**

**THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE PLAN, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN, EVENTS IN THE DEBTORS' CHAPTER 11 CASES, AND FINANCIAL INFORMATION.   ALTHOUGH THE DEBTORS BELIEVE THAT THE PLAN AND RELATED DOCUMENT SUMMARIES ARE FAIR AND ACCURATE, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS.   FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTORS' MANAGEMENT, EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED.    FOR THE FOREGOING REASONS, AS WELL AS THE COMPLEXITY OF THE DEBTORS' FINANCIAL MATTERS, THE**

**DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN, INCLUDING THE FINANCIAL INFORMATION, IS WITHOUT ANY INACCURACY OR OMISSION. THE FINANCIAL DATA SET FORTH HEREIN, EXCEPT AS OTHERWISE SPECIFICALLY NOTED, HAS NOT BEEN SUBJECTED TO AN INDEPENDENT AUDIT.**

**NEITHER THE DEBTORS NOR THE BANKRUPTCY COURT HAVE AUTHORIZED THE COMMUNICATION OR REPRESENTATION BY ANY PERSON OR ENTITY (INCLUDING ANY OF THE DEBTORS' AGENTS, OFFICERS, DIRECTORS, EMPLOYEES, ACCOUNTANTS, FINANCIAL ADVISORS, ATTORNEYS OR AFFILIATES) CONCERNING THE DEBTORS, THEIR OPERATION, FUTURE REVENUE, PROFITABILITY, VALUE OR OTHERWISE, OTHER THAN AS SET FORTH IN THE DISCLOSURE STATEMENT. THE DEBTORS MAKES NO SUCH REPRESENTATIONS OTHER THAN THAT THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT IS BELIEVED TO BE CORRECT AT THE TIME OF THE FILING OF THE DISCLOSURE STATEMENT. ANY INFORMATION, REPRESENTATION OR INDUCEMENT MADE TO SECURE OR OBTAIN ACCEPTANCES OR REJECTIONS OF THE PLAN THAT ARE OTHER THAN, OR ARE INCONSISTENT WITH, THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY ANY PERSON IN ARRIVING AT A DECISION TO VOTE FOR OR AGAINST THE PLAN. ANY SUCH ADDITIONAL INFORMATION, REPRESENTATIONS AND INDUCEMENTS SHOULD BE IMMEDIATELY BROUGHT TO THE ATTENTION OF THE PLAN PROPONENTS.**

**EXCEPT FOR HISTORICAL INFORMATION, ALL THE STATEMENTS, EXPECTATIONS, AND ASSUMPTIONS, INCLUDING EXPECTATIONS AND ASSUMPTIONS CONTAINED IN THIS DISCLOSURE STATEMENT, ARE FORWARD LOOKING STATEMENTS THAT INVOLVE A NUMBER OR RISKS AND UNCERTAINTIES. ALTHOUGH THE DEBTORS HAVE USED THEIR BEST EFFORTS TO BE ACCURATE IN MAKING THESE FORWARD LOOKING STATEMENTS, IT IS POSSIBLE THAT THE ASSUMPTIONS MADE BY THE DEBTORS MAY NOT MATERIALIZE. IN ADDITION, OTHER IMPORTANT FACTORS COULD AFFECT THE PROSPECT OF RECOVERY TO CREDITORS, INCLUDING, BUT NOT LIMITED TO, THE INHERENT RISKS OF LITIGATION AND THE AMOUNT OF ALLOWED CLAIMS.**

## 1.2    Disclosure Statement

This Disclosure Statement sets forth certain information regarding the Debtors' pre-petition history and significant events that have occurred during the Debtors' Chapter 11 cases. This Disclosure Statement also describes the Plan, alternatives to the Plan, effects of confirmation of the Plan, and the manner in which distributions will be made under the Plan. In addition, the Disclosure Statement discusses the confirmation process and voting procedures that Holders of Claims in impaired Classes must follow for their votes to be counted.

When and if confirmed by the Bankruptcy Court, the Plan will bind the Debtors and all Holders of Claims against and Interests in the Debtors, whether or not they are entitled to vote or did vote on the Plan and whether or not they receive or retain any Distributions or Property under the Plan.   Thus, all Claimants are encouraged to read this Disclosure Statement carefully.   In particular, Holders of Impaired Claims who are entitled to vote on the Plan are encouraged to read this Disclosure Statement, the Plan, and any exhibits to the Plan or Disclosure Statement carefully and in their entirety before voting to accept or reject the Plan.

### 1.3   Summary of Distributions Under the Plan

The chart below summarizes the treatment, timing and percentage distributions to each Class under the Plan.   For a further discussion, see Article IV below.

| Class No. | Claim/Interest | Treatment of Claim/Interest | Estimated Amount and Projected Recovery | Voting Rights |
|---|---|---|---|---|
| N/A | Administrative Expense Claims | Each holder of an Allowed Administrative Expense Claim will be paid in full and in Cash, without interest, on or as soon as practicable after the later of (a) thirty (30) days following the Administrative Expense Claim Bar Date, (b) ten (10) business days following the date of entry of a Final Order allowing the Claim; or (c) as the holder may otherwise agree. | Estimated Amount: $125,000

Estimated Recovery: 100% of Allowed Amount | Unimpaired and not entitled to vote |
| N/A | Priority Tax Claims | Each holder of an Allowed Priority Tax Claim, will be paid in Cash in full on the Effective Date or as soon thereafter as is reasonably practicable, but in no event later than the end of five (5) years from the Petition Date through regular quarterly installments in Cash through and including the date such Allowed Priority Tax Claim is paid | Estimated Amount: $1,134,000.00

Estimated Recovery: 100% of Allowed Amount | Unimpaired and not entitled to vote |

| Class No. | Claim/Interest | Treatment of Claim/Interest | Estimated Amount and Projected Recovery | Voting Rights |
|---|---|---|---|---|
| | | in full.   The Debtors and/or the Reorganized Debtor shall be authorized to prepay all or any portion of an Allowed Priority Tax Claim being paid in installments without penalty and the amount of any remaining quarterly payments shall then be recalculated based upon the outstanding balance payable over the remaining portion of the Payment Term.   If paid over time, the Holder shall receive interest at the Section 6621 Interest Rate (or the applicable statutory rate under state law). | | |
| 1 | Allowed Priority Claims | Each holder of an Allowed Priority Claim, will be paid in full and in Cash, without interest, on or as soon as practicable after the later of (a) the Effective Date, (b) five business days following the date of a Final Order allowing any such Claim; or (c) as the holder may otherwise agree. | Estimated Amount: $0.00

Estimated Recovery: 100% of Allowed Amount | Unimpaired and not entitled to vote |
| 2 | Allowed Claims of Gordon Food | By agreement with the Debtors, the Allowed Claims of Gordon Food totals $97,092.60.   On the Effective Date, Gordon Food shall receive a cash distribution in the amount of $17,450.57.   The remaining $79,642.03, plus | Estimated Amount: $97,092.60

Estimated Recovery: 100% of Allowed Amount | Impaired and entitled to vote |

| Class No. | Claim/Interest | Treatment of Claim/Interest | Estimated Amount and Projected Recovery | Voting Rights |
|---|---|---|---|---|
| | | interest calculated at 4% per annum and attorneys fees not to exceed $5,000, shall be paid by weekly installment payments of $1,000/week until such time as the unpaid balance reaches $11,170.43.  If the Reorganized Debtor is not in default at such time, the $11,170.43 shall be satisfied by application of outstanding rebates and the remaining balance reduced to zero.  If the Reorganized Debtor is in default under the terms hereof, the $11,170.43 remains due and owing and Gordon Food is entitled to a return of $12,000 in rebates previously paid. The Allowed Claims of Gordon Food shall be reduced to a promissory note secured by all assets of the Debtors and shall be executed on or before the Effective Date. | | |
| 3 | Allowed Tax Claims (Other than Priority Tax Claims) | Each holder of an Allowed Tax Claim, will be paid in Cash in full on the Effective Date or as soon thereafter as is reasonably practicable, but in no event later than the end of five (5) years from the Petition Date through regular quarterly installments in Cash through and including the date such Allowed Tax | Estimated Amount: $615,730.00

Estimated Recovery: 100% of Allowed Amount | Impaired and entitled to vote |

| Class No. | Claim/Interest | Treatment of Claim/Interest | Estimated Amount and Projected Recovery | Voting Rights |
|---|---|---|---|---|
| | | Claim is paid in full.   If paid over time, the Holder shall receive interest at the Section 6621 Interest Rate (or the applicable statutory rate under state law). | | |
| 4 | Other Allowed Secured Claims | Each Other Allowed Secured Claim in Class 4 shall be satisfied (a) by the transfer, assignment and conveyance by the Reorganized Debtor of the collateral securing such Class 4 Claim to the Holder of such Other Allowed Secured Claim in full and final satisfaction of such Other Allowed Secured Claim, or (b) by payment of Cash to the Holder of such Other Allowed Secured Claim in an amount equal to the value of such holder's interest in the collateral securing the Other Allowed Secured Claim. | Estimated Amount: $0.00<br><br>Estimated Recovery: 100% of Allowed Amount | Unimpaired and not entitled to vote |
| 5 | Allowed Unsecured Claims | Each Holder of an Allowed Unsecured Claim shall receive a Distribution in an amount equal to the principal amount of their Allowed Unsecured Claim on or before ninety (90) days following the Effective Date. | Estimated Amount: $200,000.00<br><br>Estimated Recovery: 100% of Allowed Amount | Impaired and entitled to vote |
| 6 | Allowed Equity Interests in VH Restaurant | As of the Effective Date, all Equity Interests in VH Restaurant shall be terminated, cancelled and | Estimated Recovery:<br><br>0.00% | Unimpaired and not entitled to |

| Class No. | Claim/Interest | Treatment of Claim/Interest | Estimated Amount and Projected Recovery | Voting Rights |
|---|---|---|---|---|
| | | of no further force or effect.  Holders of Class 6 Equity Interests are not entitled to receive or retain any property under the Plan on account of their Equity Interests in VH Restaurant. | | vote |
| 7 | Allowed Equity Interests in Restaurant 104 | As of the Effective Date, Holders of Equity Interests in Restaurant 104 shall retain their Equity Interests in the Reorganized Debtor following Confirmation of the Plan in the same percentages as they held in Restaurant 104 prior to the Effective Date. | Estimated Recovery: 100% | |

The liability estimates outlined in the above chart are estimates only, and may change as objections are filed and resolved.  The projected Administrative Expense Claims do not include estimated professional fees to be incurred by the Debtors through a projected Effective Date of June 23, 2021.

**1.4     Notice of Substantive Consolidation**

PLEASE TAKE NOTICE THAT THE PLAN PROVIDES FOR SUBSTANTIVE CONSOLIDATION OF THE DEBTORS' ASSETS AND LIABILITIES INTO A SINGLE ESTATE.  THE PLAN PROVIDES THAT THE ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE APPROVAL, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE, OF THE SUBSTANTIVE CONSOLIDATION OF VH RESTAURANT AND RESTAURANT 104 AND THEIR BANKRUPTCY ESTATES FOR ALL PURPOSES RELATED TO CLAIMS AND DISTRIBUTION OF ASSETS UNDER THE PLAN.  AS A RESULT, ON AND AFTER THE CONFIRMATION DATE (I) ALL ASSETS AND LIABILITIES OF EITHER OF THE DEBTORS AND THEIR ESTATES SHALL BE TREATED AS THOUGH THEY WERE MERGED WITH AND INTO RESTAURANT 104; (II) NO DISTRIBUTIONS SHALL BE MADE UNDER THE PLAN ON ACCOUNT OF ANY CLAIM HELD BY EITHER DEBTOR AGAINST THE OTHER DEBTOR; (III) ALL GUARANTEES OF EITHER DEBTOR OF THE OBLIGATIONS OF THE OTHER DEBTOR SHALL BE ELIMINATED; AND (IV) EACH AND EVERY

**CLAIM AND PROOF OF CLAIM AGAINST EITHER  OF THE DEBTORS SHALL BE DEEMED ONE CLAIM OR PROOF OF CLAIM AGAINST BOTH OF THE DEBTORS AND A SINGLE OBLIGATION OF THE CONSOLIDATED ESTATE ON AND AFTER THE      CONFIRMATION      DATE.       ADDITIONALLY,      THE      SUBSTANTIVE CONSOLIDATION EFFECTED PURSUANT TO THE PLAN SHALL NOT CREATE DEFENSES   TO   ANY   AVOIDANCE   ACTION   OR   CAUSE   OF   ACTION   OR REQUIREMENTS FOR ANY THIRD PARTY TO ESTABLISH MUTUALITY IN ORDER TO ASSERT A RIGHT OF SETOFF.   FOR THE REASONS SET FORTH IN GREATER DETAIL BELOW IN ARTICLE VI, SECTION 6.1 OF THE DISCLOSURE STATEMENT, THE   PLAN   PROPONENTS   BELIEVE   THAT   THE   REQUIREMENTS   FOR SUBSTANTIVE CONSOLIDATION ARE MET IN THESE BANKRUPTCY CASES AND THAT SUBSTANTIVE CONSOLIDATION IS NECESSARY TO ENSURE EQUITABLE TREATMENT OF CREDITORS.**

**1.5    Background**

On October 13, 2020 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division (the "**Bankruptcy Court**").  Upon filing for Chapter 11 protection, the Debtors became "Debtors-in-Possession" under the Bankruptcy Code and have acted in that capacity since that time.

Debtors have filed simultaneously with this Disclosure Statement their Plan. The Debtors, as proponents of the Plan, distribute this Disclosure Statement together with the Plan in order to solicit acceptances of the Plan.   This introductory section is qualified in its entirety by the detailed explanations which follow and the provisions of the Plan.   In the event of conflict between anything stated in this Disclosure Statement and the Plan, the terms of the Plan will control.

**1.6    Solicitation of Acceptances**

Pursuant to a Court Order dated _____, 2021, Creditors and Interest Holders may accept or reject the Plan no later than _____, **2021** (the "**Voting Deadline**").  A ballot with which to indicate and file an acceptance or rejection of the Plan has been provided to you. You must complete and file your ballot on or before the Voting Deadline in order for your vote to count.   Any ballot which is executed by the holder of any Allowed Claim or Allowed Interest but does not indicate acceptance or rejection of the Plan shall be deemed to have accepted the Plan. Any other ballot not filed in accordance with the filing instructions on the ballot pertaining to the Plan shall not be counted for voting purposes.

*THE   DEBTORS   HEREBY   SOLICIT   APPROVAL   OF   THE   PLAN   BY   THEIR CREDITORS AND INTEREST HOLDERS.   DEBTORS BELIEVE THE PLAN PROVIDES THE   OPTIMUM   RETURN   TO   CREDITORS   AND   THAT   LIQUIDATION   UNDER CHAPTER 7 OF THE BANKRUPTCY CODE WOULD RESULT IN A REDUCED DISTRIBUTION   TO   UNSECURED   CREDITORS.     THE   DEBTORS   URGE   EACH CREDITOR   AND   INTEREST   HOLDER   TO   VOTE   IN   FAVOR   OF   THE   PLAN   BY*

*MARKING THE "ACCEPTS" BOX ON THE ENCLOSED BALLOT AND FILING IT WITH THE COURT ON OR BEFORE THE VOTING DEADLINE.*

## ARTICLE II
## HISTORY OF THE DEBTORS AND EVENTS LEADING UP TO CHAPTER 11

**2.1    History of the Debtors**

The Debtors own and operate a Hudson Grille restaurant and sports bar in the Sandy Springs area of metropolitan Atlanta (the "**Hudson Grille Sandy Springs**").   Prior to the COVID-19 pandemic and subsequent forced shutdown in March 2020, the Hudson Grille Sandy Springs had operated continuously since 2011.   The Hudson Grille Sandy Springs is well established in the local community.   It serves a wide variety of food and drink offerings, including, among other things, burgers, steaks, fresh seafood, wings and a large selection of draft beers.   In addition, it is known as one of the top sports bars in the area.

**2.2    Events Leading Up To Chapter 11**

As a result of the pandemic caused by the COVID-19 virus, Georgia Governor Brian Kemp declared a public health emergency on March 14, 2020.   On March 23, 2020, gatherings of over 10 people were banned, bars and nightclubs were ordered to close, and a shelter-in-place order for the "medically fragile" was issued. On April 2, 2020, a statewide shelter in place order was announced. Eventually, restaurants and movie theaters were allowed to reopen on April 27, 2020. Before April 27, 2020, the Hudson Grille Sandy Springs experienced almost a 100% loss of business and the Debtors were forced to lay off all of their workers.   Since reopening the Debtors have rehired workers and slowly begun to recover their business.

Notwithstanding the pandemic's sudden, dramatic and unprecedented impact on the Debtors' business beginning in March of 2020, the landlord for the Hudson Grille Sandy Springs location, SRPF A/Marshall's Plaza, LLC SRPF as successor-in-interest to Marshalls Plaza Shopping Center, LLC (the "**Landlord**"), refused to grant any rent concessions.    When the Debtors failed to pay rent for the months of March, April and May the Landlord demanded possession of the restaurant and thereafter initiated a dispossessory action in the State Court of Fulton County, Georgia (the "**Dispossessory Action**").   The Debtors opposed the relief sought by the Landlord based, *inter alia*, on the Landlord's failure to comply with certain of its obligations under the Lease.   Pending final adjudication of the issues raised, the Debtors were required to deposit back-rent into the registry of court and to continue to deposit current rent into the registry of court every month during the pendency of the Dispossessory Action.   As a result, by the end of September there was approximately $158,000 paid by the Debtors on deposit with the Clerk of Fulton County State Court.   On September 23, 2020, an order was entered in the Dispossessory Action granting the Landlord's request for issuance of a writ of possession.   A timely appeal from that order was filed on or about September 30, 2020 and the Debtors sought relief under Chapter 11 shortly thereafter.

## ARTICLE III
## OPERATIONS DURING CHAPTER 11

Since the Petition Date, the Debtors have conducted their Business as debtors-in-possession under Sections 1107 and 1108 of the Bankruptcy Code.   The following is a description of significant events that have taken place during the pendency of these Cases.

### 3.1    Retention of Professionals

Upon the commencement of the Debtors' Chapter 11 cases, the Debtors retained the law firm of Scroggins & Williamson, P.C. to act as their Chapter 11 counsel in connection with the Cases.   Scroggins & Williamson, P.C. has extensive experience representing debtors in complex Chapter 11 bankruptcy cases.

### 3.2    Schedules and Statement of Financial Affairs

On November 6, 2020, the Debtors filed with the Court their schedules and statements required by Bankruptcy Rule 1007, which were subsequently amended on November 25, 2020. These schedules and statements provide a detailed analysis of the Debtors' financial condition on or about the Petition Date.   These documents are available for inspection at the office of the Clerk of the United States Bankruptcy Court.

### 3.3    Bar Date

By Order of the Bankruptcy Court dated February 10, 2021, the Court established 5:00 p.m. (Eastern) on March 31, 2021 for non-governmental units and 5:00 p.m. (Eastern) on April 11, 2021 for governmental units as the last date by which all Creditors and Interest Holders were required to file proofs of claim or interest or requests for payment of administrative expense claims under section 503(b)(9) of the Bankruptcy Code or be barred from (i) asserting any claim or interest against the Debtors, and (ii) voting on, or receiving distributions under, the Plan.   Certain Creditors whose claims were listed in the schedules and not identified as "contingent," "disputed" or "unliquidated" may not have been required to file proofs of claim.

## ARTICLE IV
## CLASSIFICATION OF CLAIMS AND INTERESTS

### 4.1    Introduction

The following is a summary of the Plan.   This overview is qualified in its entirety by reference to the provisions of the Plan.   All Claims and Interests in the Cases are classified in the Classes below.   The Plan provides that holders of Allowed Claims in certain classes will be entitled to a distribution of cash.   Notwithstanding any provision of the Plan, a Claim in a particular Class is entitled to receive Distributions pursuant to the Plan only to the extent that such

- 11 -

Claim is an Allowed Claim in that Class, and only to the extent such Claim has not been paid, released, or otherwise satisfied prior to the Effective Date.

**4.2    Classifications**

The Plan divides all Claims and Interests into the following Classes, which shall be mutually exclusive.

Classes of Claims and Interests

| | |
|---|---|
| Class 1: | Class 1 shall consist of all Allowed Priority Claims. |
| Class 2: | Class 2 shall consist of all Allowed Claims of Gordon Food Service, Inc. |
| Class 3: | Class 3 shall consist of all Allowed Tax Claims (Other Than Priority Tax Claims) |
| Class 4: | Class 4 shall consist of all Other Allowed Secured Claims. |
| Class 5: | Class 5 shall consist of all Allowed Unsecured Claims. |
| Class 6: | Class 6 shall consist of all Allowed Equity Interests in VH Restaurant. |
| Class 7: | Class 7 shall consist of all Allowed Equity Interests in Restaurant 104. |

# ARTICLE V
# DESCRIPTION OF CLAIMS AND TREATMENT UNDER THE PLAN

The Classes of Claims and Interests, as well as their treatment and an analysis of whether they are impaired or unimpaired, are described as follows:

**5.1    Unclassified Claims.**

Each Holder of an Allowed Administrative Expense Claim or an Allowed Priority Tax Claim will receive the treatment set forth in Article 2 of the Plan.

**(a)    Administrative Claims**

Administrative Claims consist primarily of (i) professional fees and expenses incurred during the administration of the Chapter 11 case and (ii) Post-Petition Trade Claims.  Counsel for the Debtor is holding a retainer in the amount of $25,838.50, which can be applied against its professional fees. All Allowed Administrative Claims (other than Post-Petition Trade Claims) shall be paid by the Reorganized Debtor in full on or before the later of the Effective Date of the Plan or within five days of entry of a Final Order allowing the Claim, unless otherwise agreed between the Debtors and the Claimant.

All Allowed Post-Petition Trade Claims shall be paid by the Reorganized Debtor in the normal course of business in accordance with any agreement or course of dealings between the Holder of any Allowed Post-Petition Trade Claim and the Debtors.  If and to the extent the Debtors or the Reorganized Debtor disputes all or a portion of any Post-Petition Trade Claim, the

dispute may be resolve in the Bankruptcy Court, or any court of competent jurisdiction, or as otherwise agreed to by the parties before such Claim becomes an Allowed Post-Petition Trade Claim.

        **(b)**      **Priority Tax Claims**

Priority Tax Claims consist of all Allowed Priority Tax Claims, including but not limited to those held by the United States of America, the State of Georgia, or any other appropriate taxing authorities. Each holder of an Allowed Priority Tax Claim shall be paid in Cash in full on the Effective Date or as soon thereafter as is reasonably practicable, but in no event later than the end of five (5) years from the Petition Date. As to any Allowed Priority Tax Claim not paid in full on the Effective Date, the Holder of such Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim regular quarterly installment payments in Cash in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code through and including the date such Allowed Priority Tax Claim is paid in full. Holders of Allowed Priority Tax Claims shall receive interest on account of their Allowed Priority Tax Claims at the Section 6621 Interest Rate; provided, however, that if the Holder of such Allowed Priority Tax Claim is a city, county or state, such Holder shall receive interest on account of its Allowed Priority Tax Claim at the applicable statutory rate under state law. To the extent that any Allowed Priority Tax Claim is allowed after the Effective Date, it will be paid in full in Cash as soon after allowance as is reasonably practicable over a period no later than the end of five (5) years from the Petition Date, including interest as calculated above.

**5.2**      **Unimpaired Classes of Claims and Interests**

The following classes of Claims and Interests are unimpaired; therefore, under 11 U.S.C. § 1126(f), they will be conclusively presumed to have accepted the Plan.

        **(a)**      **Class 1 – Allowed Priority Claims**

All Priority Claims are placed in Class 1 under the Plan, which provides that all Allowed Priority Claims are to be paid on the Effective Date. The Debtor does not anticipate that there will be any Allowed Priority Claims. Class 1 is unimpaired under the Plan and deemed to accept the Plan. Accordingly, Holders of Priority Claims in Class 1 are not entitled to vote on the Plan.

        **(b)**      **Class 4- Other Allowed Secured Claims**

All Secured Claims (other than those of Gordon Food) are placed in Class 4 under the Plan, which provides that all Other Allowed Secured Claims are to be paid on the Effective Date. The Debtor does not anticipate that there will be any Allowed Secured Claims. Class 4 is unimpaired by the Plan and deemed to accept the Plan. Accordingly, Holders of Other Allowed Secured Claims in Class 4 are not entitled to vote on the Plan.

(c)    **Class 7- Allowed Equity Interests in Restaurant 104**

Class 7 consists of all Equity Interests in Restaurant 104.   As of the Effective Date, Holders of Equity Interests in Restaurant 104 shall retain their Equity Interests in the Reorganized Debtor following Confirmation of the Plan in the same percentages as they held in Restaurant 104 prior to the Effective Date.   Class 7 is Unimpaired by the Plan.   All Holders of Equity Interests in Class 7 are deemed to have accepted the Plan and, therefore, are not entitled to vote on the Plan

**5.3    Impaired Classes of Claims**

(a)    **Class 2 – Allowed Claims of Gordon Food Service, Inc.**

All Allowed Claims of Gordon Food are placed in Class 2.   By agreement with the Debtors, the Allowed Claims of Gordon Food totals $97,092.60.   On the Effective Date, Gordon Food shall receive a cash distribution in the amount of $17,450.57.   The remaining $79,642.03, plus interest calculated at 4% per annum and attorneys fees not to exceed $5,000, shall be paid by weekly installment payments of $1,000/week until such time as the unpaid balance reaches $11,170.43.  If the Reorganized Debtor is not in default at such time, the $11,170.43 shall be satisfied by application of outstanding rebates and the remaining balance reduced to zero.   If the Reorganized Debtor is in default under the terms hereof, the $11,170.43 remains due and owing and Gordon Food is entitled to a return of $12,000 in rebates previously paid.   The Allowed Claims of Gordon Food shall be reduced to a promissory note secured by all assets of the Debtors and shall be executed on or before the Effective Date.   Class 2 is impaired under the Plan and is entitled to vote.

(b)    **Class 3- Allowed Tax Claims, other than Priority Tax Claims**

All Allowed Tax Claims, other than Priority Tax Claims are placed in Class 3. Each Holder of an Allowed Class 3 Tax Claims shall be paid the principal amount of such Claim, exclusive of interest accruing on or after the Petition Date, in the same manner and over the same period of time as Holders of Allowed Priority Tax Claims in accordance with Article II, Section 2.5.   To the extent any Allowed Tax Claim is secured, the Holder of such Allowed Tax Claim shall retain such security in the same collateral and in the same order of priority as existed immediately prior to the Effective Date.

(c)    **Class 5 – Unsecured Claims**

Class 5 consists of all Allowed Unsecured Claims.   Each Holder of an Allowed Unsecured Claim in Class 5 shall receive Distribution in an amount equal to one hundred percent (100%) of its Allowed Unsecured Claim (without interest), which shall be paid on or before ninety (90) days following the Effective Date, or as soon as reasonably practicable thereafter.   Class 5 is Impaired by the Plan.   Each Holder of an Allowed Unsecured Claim in Class 5 is entitled to vote to accept or reject the Plan.

(d)    **Class 6- Equity Interests in VH Restaurant**

Class 6 consists of all Equity Interests in VH Restaurant.   As of the Effective Date, all Equity Interests in VH Restaurant shall be terminated, cancelled and of no further force or effect.   Holders of Class 6 Equity Interests are not entitled to receive or retain any property under the Plan on account of their Equity Interests in VH Restaurant.   Accordingly, Class 6 Equity Interest Holders are deemed to have rejected the Plan pursuant to Section 1126(8).   Class 6 Equity Interest Holders are not entitled to vote on the Plan.

## ARTICLE VI
## MEANS FOR EXECUTION OF THE PLAN

### 6.1    Substantive Consolidation

As noted above, entry of the Confirmation Order shall constitute the approval, pursuant to Section 105(a) of the Bankruptcy Code, of the substantive consolidation as of the Effective Date of VH Restaurant and Restaurant 104 and their Estates for all purposes related to Claims and distribution of assets under the Plan.   Substantive consolidation is an equitable remedy that has the effect of creating "one common pool of assets, liabilities and a single body of creditors, while extinguishing the intercorporate liabilities of the consolidated estates." *White v. Creditors Serv. Corp. (In re Credit Serv. Corp.)*, 195 B.R. 680, 689 (Bankr. S.D. Ohio 1996); *In re Bonham,* 229 F.3d 750, 764 (9th Cir. 2000). Its primary purpose is to promote the equitable treatment of all creditors. *Eastgroup Props. v. Southern Motel Assoc., Ltd.*, 935 F.2d 245, 248 (11th Cir. 1991). The Plan Proponents strongly believe that substantive consolidation of the Debtors and their respective bankruptcy estates as proposed under the Plan will reflect the economic reality of the Debtors' true operational and financial structure.   The applicable legal standard for substantive consolidation has been well defined by the courts.

To establish a *prima facie* case for substantive consolidation, a party must demonstrate that (i) there is a substantial identity between the entities to be consolidated; and (ii) consolidation is necessary to avoid some harm or to realize some benefit. *Eastgroup Props. v. Southern Motel Assocs. Ltd.*, 935 F.2d 245, 249 (11th Cir. 1991). Factors considered by courts to determine whether substantive consolidation is appropriate include:

(i) presence or absence of consolidated financial statements;

(ii) unity of interests and ownership between the various corporate entities;

(iii) existence of parent and inter-corporate guarantees on loans;

(iv) degree of difficulty in segregating and ascertaining individual assets and liabilities;

(v) existence of transfers of assets without formal observance of

corporate formalities;

(vi) commingling of assets and business functions; and

(vii) profitability of consolidation at a single physical location.

*Id. See also Holywell Corp. v. Bank of New York*, 59 B.R. 340, 347 (S.D. Fla. 1986). Once a *prima facie* case for substantive consolidation is made, a presumption arises that creditors have not relied solely upon the credit of individual debtor entities.   The burden then shifts to an objecting creditor to show that: (i) it has relied on the separate credit of one of the entities to be consolidated; and (ii) it will be prejudiced by substantive consolidation. *Eastgroup*, 935 F.2d at 249. Even if the objecting creditor meets this burden, the Court may still order substantive consolidation if the benefits of such relief heavily outweigh the harm. *Id.*

The Plan Proponents believe that substantive consolidation of the Debtors' separate Estates is warranted and appropriate in these cases because (i) there is a strong unity of interest between these Debtors; and (ii) a failure to consolidate the cases might unfairly favor one group of similarly situated creditors over others. As a practical matter, the Debtors had consolidated their operations prior to the Petition Date and were functioning as a single entity from a single physical location.

Based on the foregoing, the Plan Proponents believe that the facts of this case establish a *prima facie* case for substantive consolidation under the *Eastgroup* test. Indeed, the Plan Proponents believe that substantive consolidation is the only way to deal fairly with creditors of these Debtors.   For these reasons, substantive consolidation is both desirable and necessary. Substantive consolidation will also facilitate and expedite the administration of the Debtors' Estates by eliminating duplicative or inconsistent efforts on the part of the various estates with respect to claims administration and asset recovery.

**6.2     Funding for the Plan**

The Allowed Administrative Expense Claims of the Debtors' Chapter 11 counsel will be paid (i) out of the pre-petition retainer currently held by counsel, (ii) from cash on hand as of the Effective Date, and/or (iii) from proceeds of a loan made by a non-debtor affiliate to the Reorganized Debtor.   All other Allowed Administrative Expense Claims will be paid in full on the Effective Date from cash generated from the operations of the Debtors and the Reorganized Debtor.

**6.3     Post-Confirmation Management and Ownership**

Following confirmation of the Plan, Jeffrey R. Landau will serve as the manager of the Reorganized Debtor.   Mr. Landau will not receive compensation from the Reorganized Debtor during the first twelve months following the Effective Date.    After such twelve-month period, Mr. Landau's compensation may be adjusted in accordance with market rates.   As of the Effective Date, all Equity Interests in VH Restaurant shall be terminated, cancelled and of no further force or effect and Holders of Equity Interests in VH Restaurant shall not receive or retain any property

- 16 -

under the Plan on account of their Equity Interests in VH Restaurant.   As of the Effective Date, Holders of Equity Interests in Restaurant 104 shall retain their Equity Interests in the Reorganized Debtor following Confirmation of the Plan in the same percentages as they held in Restaurant 104 prior to the Effective Date.

**ARTICLE VII**
**PRESERVATION OF RIGHTS OF ACTION**

**7.1    Causes of Action**

Except as otherwise expressly provided in the Plan, any rights or causes of action accruing to or held by the Debtors or their Estates, including, without limitation, any rights or causes of action under Section 544 through 550, inclusive of the Bankruptcy Code or any other statute or legal theory shall remain assets of, and vest in, the Reorganized Debtor.   The Reorganized Debtor may pursue those rights of action, as it deems to be appropriate and in the best interest of the Reorganized Debtor.   It is uncertain whether the potential preference claim listed in the Debtors' Statement of Financial Affairs will yield any material recovery to the Estates.   The Debtors believes that many of the payments listed may qualify for one or more of the recognized preference defenses.

**7.2    Preservation of Rights of Action**

All Avoidance Actions shall survive confirmation, and the assertion of Avoidance Actions shall not be barred or limited by any estoppel, whether judicial, equitable or otherwise.

**7.3    Procedures for Resolving Disputed Claims**

Notwithstanding any other provisions of the Plan, no payment or distribution shall be made on account of a Disputed Claim until such Claim becomes an Allowed Claim.   In lieu of distributions under the Plan to holders of Disputed Claims, a Disputed Claims reserve shall be maintained by the Reorganized Debtor for payment of any Disputed Claim which becomes an Allowed Claim.   Distributions on account of any Disputed Claim that has become an Allowed Claim shall be made as soon as is reasonably practicable.

Subsequent to the Effective Date, the Reorganized Debtor shall have the authority to settle and resolve any Disputed Claim that was originally asserted in an amount less than twenty-five thousand dollars ($25,000) upon such terms and conditions as the Reorganized Debtor deems appropriate and in the best interests of the Estate.   Any such compromise and settlement shall be deemed final and binding upon all parties in interest in the Cases.   The Reorganized Debtor shall be released from any obligation to provide notice to or file and serve pleadings upon any such parties in interest, and shall be released from any requirement to obtain Court approval, in connection with compromising these claims.

With respect to any Disputed Claim that was originally asserted in an amount that equals or exceeds twenty-five thousand dollars ($25,000), the Reorganized Debtor shall have the

authority to compromise and settle any such Claim on such terms as the Reorganized Debtor deems appropriate and in the best interests of the Estate, subject to providing Designated Notice of any such proposed compromise and a reasonable opportunity to object thereto.  If a party in interest files a written objection with the Court in the Cases with respect to any proposed compromise of any Disputed Claim, and serves a copy of said objection upon the Reorganized Debtor and its counsel within 10 days from the service of Designated Notice of the proposed compromise, then a hearing shall be scheduled with respect to said objection.  If no such objection is timely filed and served, the Reorganized Debtor is authorized to compromise and resolve such Disputed Claim without further authorization.  The Reorganized Debtor may file motions which seek to compromise more than one Claim.

**ARTICLE VIII**
**EXECUTORY CONTRACTS**

**8.1    Assumption of Lease with Landlord**

VH Restaurant and the Landlord are parties to a Lease for space in which the Debtors operate a Hudson Grille restaurant and sports bar.  As of the Effective Date, the Lease shall be deemed assumed and assigned to the Reorganized Debtor pursuant to sections 105, 365 and 1123 of the Bankruptcy Code.  According to the Debtors' books and records, the payments and other obligations owed by VH Restaurant under the Lease which have become due and owing have been paid or performed in the ordinary course of business or have been funded into an escrow account being held by Calloway Title and Escrow.  Upon assumption of the Lease, the Debtors propose to pay the Landlord the $167,829.60 (plus interest, if any) held in escrow in full and final satisfaction of any and all amounts required to cure defaults under the Lease.  Any dispute as to the calculation of amounts required to cure defaults under the Lease shall be heard and determined by the Court at the hearing to consider confirmation of the Plan.   Assumption of the Lease is a condition precedent to confirmation of the Plan.

**8.2    All Other Executory Contracts and Unexpired Leases**

Except as provided in Section 8.1 above, or as otherwise expressly provided in this Plan, any and all executory contracts and unexpired leases of the Debtors not expressly assumed prior to the Effective Date or not the subject of a pending motion to assume on the Effective Date shall be deemed rejected upon the Effective Date.   For the avoidance of doubt, the Lease is not subject to rejection by this provision.  Additionally, notwithstanding anything to the contrary herein, all insurance policies in force as of the Effective Date shall remain in effect following the Effective Date unless and until rejected by separate motion and/or terminated in accordance with their terms.  Claims arising from the rejection of any executory contracts or unexpired leases under this Plan shall be filed within thirty (30) days following the Confirmation Date and shall be treated as Class 5 Claims.   Any person seeking to assert such a Claim who fails to file a proof of claim within this thirty (30) day period shall be deemed to have waived said Claim, and it shall be forever barred.

## ARTICLE IX
## DISTRIBUTION TO HOLDERS OF CLAIMS

**9.1     Address for Distributions**

All Cash payments required to be made under the Plan will be sent to Holders of Claims at the addresses listed in the Debtors' schedules or stated in any Proof of Claim filed by a Holder of a Claim or to such other address as the Holder of a Claim shall provide in writing to the Reorganized Debtor.  The proceeds of any payment properly sent to the Creditor but returned because of unknown or insufficient address, and the proceeds of any check not cashed within ninety (90) days of sending will become property of the Reorganized Debtor and the rights of the original payee shall be extinguished.  Return of mail by the United States Post Office as "undeliverable and without forwarding address" shall be conclusive evidence of an attempt to deliver to the address shown.

**9.2     Rounding**

Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down to the nearest whole cent.

**9.3     No Interest on Claims**

Except as provided in a Final Order entered in this Case, (a) no holder of any Unsecured Claim (except Priority Tax Claims) shall be entitled to interest accruing on or after the Petition Date on such Claim, and (b) interest shall not accrue or be paid upon any Disputed Claim with respect to the period from the Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim, or any part thereof, becomes an Allowed Claim.

## ARTICLE X
## CONDITIONS PRECEDENT TO EFFECTIVENESS OF PLAN

The Effective Date will not occur and the Plan will not be consummated until each of the following conditions have been satisfied, provided that the Debtors may agree to waive any one or more of the following conditions:

**10.1    Confirmation Order Must Be Entered**

The Confirmation Order must have been signed by the Bankruptcy Court and duly entered on the docket for the Cases by the clerk of the Bankruptcy Court in form and substance acceptable to the Debtors.

**10.2    Confirmation Order Must Not Be Stayed, Reversed, Modified or Amended**

There must not be any stay in effect with respect to the Confirmation Order, and the Confirmation Order must not have been reversed, modified or amended in any material respects prior to the Effective Date without the written consent of the Debtors.

**10.3    Provisions of the Confirmation Order**

Among other things, the Confirmation Order must:

**(a)**    Authorize and direct the Reorganized Debtor to take, or cause to be taken, all such actions as are necessary to enable the Reorganized Debtor to implement the provisions of the Plan;

**(b)**    Authorize and direct the Reorganized Debtor to perform its obligations under the Plan, and to take all actions and execute all documents and instruments reasonably necessary to consummate the transactions contemplated by the Plan;

**(c)**    Provide that no holder of a Claim, Lien or Interest will be permitted to execute against or receive Distributions from the Debtors except in accordance with the express provisions of the Plan.

**10.4    Confirmation Order Must be Final**

The Confirmation Order shall have become a Final Order.

**10.5    Order Authorizing Assumption of Lease Must be Entered**

An order authorizing assumption of the Lease must have been signed by the Bankruptcy Court and duly entered on the docket for the Cases by the clerk of the Bankruptcy Court in form and substance acceptable to the Debtors.

**ARTICLE XI**
**VOTING ON THE PLAN AND THE CONFIRMATION PROCESS**

**11.1    Classes Entitled to Vote**

Only a Holder of an Allowed Claim or Allowed Interest classified in an Impaired Class is entitled to vote on the Plan.  Under Section 1124 of the Bankruptcy Code, a Class of Claims or Interests is "impaired" by the Plan if the legal, equitable or contractual rights attaching to the Claims or Interests of that Class are modified.  Modification for purposes of determining impairment, however, does not include the curing of defaults and the reinstating of maturity.

In order to have an Allowed Claim, a Claimant must have (1) timely filed a Proof of Claim or (2) been listed in the Schedules as having a Claim that is not contingent, unliquidated or disputed.  If such a Claim was scheduled as contingent, unliquidated or disputed, and if Claimant

did not file proof of such Claim by the Bar Date or after the Bar Date with leave of the Bankruptcy Court, or if such Claim is the subject of an objection, Claimant does not have an allowed Claim, cannot vote, and will not participate in any Distributions under the Plan until such time as the Claim becomes an Allowed Claim.

The Claims and Interests of the Debtors are divided by the Plan into Classes 1 through 5. The Claims or Interests in Classes 1, 3 and 5 are unimpaired. Consequently, the Holders of such Claims are conclusively presumed to have accepted the Plan and will not be entitled to vote on the Plan. The Claims in Classes 2 and 4 are impaired and may vote on the Plan.

**11.2    Voting Instructions**

Each Holder of an Allowed Claim or Interest in a voting Class may cast its vote electronically pursuant to the Court's electronic filing system or may vote to accept or reject the Plan by completing, dating, signing and returning the Ballot accompanying this Disclosure Statement to:

> Clerk, United States Bankruptcy Court
> Northern District of Georgia
> 75 Ted Turner Drive, SW
> Suite 1340
> Atlanta, GA 30303

With a copy to:

> Ashley Reynolds Ray, Esq.
> Scroggins & Williamson, P.C.
> 4401 Northside Parkway
> Suite 450
> Atlanta, Georgia 30327

Any Ballot received which does not indicate either an acceptance or rejection of the Plan shall be deemed to constitute an acceptance of the Plan. Ballots submitted by facsimile will not be accepted. Only originally signed Ballots will be counted. A Ballot shall not constitute a Proof of Claim or Proof of Interest or an amendment to a Proof of Claim or Proof of Interest.

If a Creditor has a Claim in more than one Class under the Plan, that Creditor should receive a separate Ballot for each such claim. If any Claimant needs additional Ballots, or believes it has a Claim that should be placed in Class 2 or 4 and did not receive a Ballot, please contact the Debtors' counsel, Ashley R. Ray, at the address set forth above, sufficiently in advance of the Voting Deadline to obtain the Ballot and return the Ballot before the Voting Deadline.

**11.3    Requirements of Confirmation**

The Bankruptcy Court will confirm the Plan only if it determines that all of the requirements of the Bankruptcy Code have been met.  The Bankruptcy Code requires, among other things, that (i) the Plan be accepted by at least one impaired Class, (ii) the Bankruptcy Court make a determination that the Plan is in the "best interests" of all Holders of Claims and Interests (that is, dissenting Creditors and Interest Holders will receive at least as much under the Plan as they would receive in a liquidation under Chapter 7 of the Bankruptcy Code), (iii) the Bankruptcy Court make a determination that the Plan is feasible, and (iv) the Plan has classified Claims and Interests in a permissible manner.  In order to confirm the Plan, the Bankruptcy Court must find that all of these and certain other requirements have been met.   Thus, even if the requisite vote is achieved for each impaired Class, the Bankruptcy Court must make independent findings regarding the Plan's conformity with these requirements of the Bankruptcy Code before it may confirm the Plan.   Additionally, if the requisite vote will not be achieved for each impaired Class, the Bankruptcy Court must also make independent findings regarding the Plan's conformity with the requirements of Section 1129(b) of the Bankruptcy Code.   The various statutory requirements are discussed below.

**11.4    Acceptance by at Least One Impaired Class**

In order for the Plan to be confirmed, the Plan must be accepted by at least one impaired Class that is entitled to vote on the Plan.   A Class of Impaired Claims will have accepted the Plan if at least two-thirds in amount and more than one-half in number of the Claims actually voting in the Class have accepted it.

**11.5    Best Interests Test**

The Plan cannot be confirmed unless the Bankruptcy Court determines that the Plan is in the "best interests" of the Debtors' Creditors and Interest Holders.   The Plan will be deemed to have satisfied the "best interests" test if the Plan provides to each dissenting or nonvoting member of each impaired Class a recovery that has a value that is at least equal to the distribution which such member would receive if the assets of the Debtors were liquidated on the Effective Date in a hypothetical case under Chapter 7 of the Bankruptcy Code by a Chapter 7 trustee.   If all members of an impaired Class of Claims or Equity Interest Holders vote to accept the Plan, the "best interests" test does not apply with respect to that Class.

In applying the "best interests" test, the Bankruptcy Court would ascertain the hypothetical recoveries in a Chapter 7 liquidation to the Debtors' Creditors and Interest Holders.   These hypothetical Chapter 7 liquidation recoveries would then be compared with the distributions offered to each impaired Class of Claims or Interests under the Plan in order to determine if the Plan satisfies the "best interests" test.

In applying the "best interests" test, it is likely that Claims and Interests in the Chapter 7 case would not be classified in the same manner that such Claims and Interests are classified under the Plan and the assets and liabilities of the two Debtors would not be substantively consolidated

as proposed under the Plan.   In the absence of a contrary determination by the Bankruptcy Court, all pre-bankruptcy Unsecured Claims which have the same rights upon liquidation would be treated as one Class for the purposes of determining the potential distribution of the liquidation proceeds resulting from the Debtors' Chapter 7 cases.   The distributions from the liquidation proceeds would be calculated ratably according to the amount of the Claim held by each Creditor in each separate Case.   The Debtors believe that the most likely outcome of liquidation proceedings under Chapter 7 would be the application of the rule of absolute priority of distributions.   Under that rule, no junior Creditor receives any distribution until the Allowed Claims of all senior Creditors are paid in full, and no Equity Interest Holder receives any distribution until the Allowed Claims of all Creditors are paid in full.

As discussed in more detail in Article XVII of this Disclosure Statement, the Debtors' analysis indicates that confirmation of the Plan will provide each Creditor and Interest Holder holding a Claim or Interest in an impaired Class with a recovery that is at least equal to the recovery that such Creditor or Interest Holder would receive pursuant to a liquidation and distribution of the Assets under Chapter 7 of the Bankruptcy Code.

## 11.6    Feasibility of the Plan

In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is feasible; that is, as a practical matter, that the Debtors will be able to meet their obligations under the Plan on a timely basis and according to its terms. The Debtors believe that the Plan is feasible.

## 11.7    Classification of Claims

The Debtors believe that the Plan meets the classification requirements of the Bankruptcy Code, which require that a Plan of Reorganization place each Claim or Interest in a Class with other Claims or Interests which are "substantially similar."

## 11.8    Additional Requirements of Section 1129(b) of the Bankruptcy Code

In the event the Plan does not satisfy the requirements of Section 1129(a) of the Bankruptcy Code, the Debtors will seek confirmation of the Plan pursuant to the so-called "cramdown" provisions of Section 1129(b) of the Bankruptcy Code.   Pursuant to Section 1129(b), the Bankruptcy Court must determine whether the Plan is fair and equitable and does not discriminate unfairly against each impaired Class of Claims or Interests that has not accepted the Plan.   The Plan will not discriminate unfairly if no Class receives more than it is legally entitled to receive for its Claims.   "Fair and equitable" has different meanings for Secured Claims, Unsecured Claims and Equity Interests.

With respect to a Secured Claim, "fair and equitable" means either (i) the impaired Secured Creditor retains its liens to the extent of its Allowed Secured Claim and receives deferred Cash payments at least equal to the allowed amount of its Claim with a present value as of the Effective Date of the Plan at least equal to the value of its interest in the property securing its liens, (ii) if property subject to the lien of the impaired Secured Creditor is sold free and clear of its lien, the

impaired Secured Creditor receives a lien attaching to the proceeds of the sale, or (iii) the impaired Secured Creditor realizes the "indubitable equivalent" of its Claim under the Plan.   Under certain circumstances, a Secured Creditor is entitled under Section 1111(b) of the Bankruptcy Code to elect to have its entire Claim, including any deficiency, treated as a Secured Claim.

With respect to an Unsecured Claim, "fair and equitable" means either (i) the impaired Unsecured Creditor receives property of a value equal to the amount of its Allowed Claim, or (ii) the Holders of Claims or Interests that are junior to the Claims of the dissenting Class will not receive any property under the Plan.

With respect to a Class of Equity Interests, "fair and equitable" means either (i) each Holder of an Interest of such Class receives or retains on account of such Interest property with a value equal to the greater of the allowed amount of any fixed liquidation preference to which such Holder is entitled, any fixed redemption price to which such Holder is entitled or the value of such Interest, or (ii) the Holder of any Interest that is junior to the Interests of such Class will not receive or retain any property on account of such junior Interest.

The Debtors believe the Plan meets the fair and equitable test with respect to each Holder of an impaired Claim or Interest.

### 11.9     Objections to Confirmation

As will be set forth in the Order Approving Disclosure Statement and Notice of Confirmation Hearing, any objections to confirmation of the Plan must be in writing, must set forth the objector's standing to assert any such objection, and must be filed with the Bankruptcy Court and served on counsel for the Debtors.   The Order Approving Disclosure Statement and Notice of Confirmation of Hearing will contain all relevant procedures relating to the submission of objections to confirmation and should be reviewed in its entirety by any party who has an objection to confirmation.

### 11.10    Confirmation of Plan Without Acceptance of All Impaired Classes

Even if one or more impaired Classes do not vote to accept the Plan, the Bankruptcy Court may, pursuant to Section 1129(b) of the Bankruptcy Code, confirm the Plan without the acceptance of all impaired Classes.   Confirmation under Section 1129(b) requires that the Plan be fair and equitable with respect to each impaired Class of Claims that has not accepted the Plan.   The Plan proponents reserve their right to seek Confirmation of the Plan under Section 1129(b) if one or more Classes of Impaired Claims does not accept or is deemed not to have accepted the Plan.

### 11.11    Hearing on Confirmation of the Plan

Section 1128 of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan.   At that time, the Debtors will present the results of the vote by each impaired Class of Creditors entitled to vote in favor of or in opposition to the Plan. The Bankruptcy Court will consider whether the requirements for confirmation of the Plan under

the Bankruptcy Code have been satisfied, as well as any objections to the Plan that are timely filed. Any Creditor may object to the confirmation of the Plan, regardless of whether it is entitled to vote on the Plan.

## ARTICLE XII
## MODIFICATIONS AND AMENDMENTS

The Debtors reserve the right to alter, amend or modify the Plan as contemplated by Section 1127 of the Bankruptcy Code.   The Plan may be modified, before or after Confirmation, without notice or hearing, or on such notice and hearing as the Court deems appropriate, if the Court finds that the proposed modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard to the proposed modification.   Without limiting the foregoing, the Plan otherwise may be modified after notice and hearing.   In the event of any modification at or before Confirmation, any votes in favor of the Plan shall be deemed to be votes in favor of the Plan as modified, unless the Court finds that the proposed modification materially and adversely affects the rights of the parties in interest that cast said votes.

## ARTICLE XIII
## TAX CONSEQUENCES

Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and Holders of Interests, or within each Class.   Significant tax consequences may occur as a result of confirmation of the Plan under the United States Internal Revenue Code and pursuant to state, local, and foreign tax statutes.   Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims as well as the possibility that events subsequent to the date hereof could change the tax consequences, this discussion is intended to be general in nature only.   No specific tax consequences to any Creditor or Holder of an Interest are represented, implied or warranted.   Each Holder of a Claim or Interest should seek professional tax advice, including the evaluation of recently enacted or pending legislation, because recent changes in taxation may be complex and lack authoritative interpretation.

THE PROPONENTS ASSUMES NO RESPONSIBILITY FOR THE TAX EFFECT THAT CONSUMMATION OF THE PLAN WILL HAVE ON ANY GIVEN HOLDER OF A CLAIM OR INTEREST.   HOLDERS OF CLAIMS OR INTERESTS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN TO THEIR INDIVIDUAL SITUATION.

The receipt by a Creditor or Interest Holder of cash or property in full or partial payment of its Claim or Interest may be a taxable event.   To the extent that a portion of the cash or the fair market value of any property received is attributable to accrued and unpaid interest on a Claim

being paid, a Creditor may recognize interest income.  A Creditor or Interest Holder may also recognize gain or loss equal to the difference between the sum of the amount of cash received and the adjusted basis in the Claim or Interest for which the Holder receives amounts under the Plan. Such gain or loss may be treated as ordinary or capital depending upon whether the Claim or Interest is a capital asset.

## ARTICLE XIV
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction, notwithstanding entry of the Confirmation Order and notwithstanding the occurrence of the Effective Date of the Plan, for the following purposes:

**(a)**     to enforce all causes of action which exist on behalf of the Debtors pursuant to the provisions of this Plan or applicable law;

**(b)**     to enter orders and injunctions and restraints to enforce the provisions of the Plan;

**(c)**     to determine claims asserted under Section 507(a)(2) of the Bankruptcy Code, including claims for compensation and reimbursement of expenses accruing prior to the Confirmation Date;

**(d)**     to determine any Disputed Claims or disputes concerning the validity of or the market value of any collateral underlying any Secured Claim;

**(e)**     to enter orders regarding interpretation of the Plan, or any document created in connection with the Plan, or any disputes with respect thereto;

**(f)**     to conduct hearings and to enter orders modifying the Plan as provided herein or in the Bankruptcy Code;

**(g)**     to determine any and all applications, claims, adversary proceedings, and contested or litigated matters pending on the Confirmation Date;

**(h)**     to determine any applications for rejection or assumption of executory contracts or leases, and to determine Claims resulting from rejection of executory contracts and leases;

**(i)**     to allow or disallow, and estimate, liquidate, or determine any Claims against the Debtors, including tax claims, but excluding any Claims deemed Allowed by this Plan, and to enter or enforce any order requiring the filing of any such Claim before a particular date; and

**(j)**     to enter orders required for the administration of the Plan, including, but not limited to:

     **i.**        resolution of disputes pertaining to the amounts of payments under the Plan to Claimants;

     **ii.**       conducting post-confirmation valuation hearings as required by the Plan or authorized by the Bankruptcy Code; and

     **iii.**      exercising jurisdiction over any other matter provided for or consistent with the provisions of Chapter 11 of the Bankruptcy Code.

## ARTICLE XV
## INJUNCTION

The Confirmation Order shall, on the Effective Date, operate as an injunction against any act against the Estate or the assets of the Estate to initiate, prosecute, enforce, liquidate, collect or otherwise assert any Claim against the Estate or the assets of the Estate, except as provided in the Plan. Any act taken in violation of this injunction shall be null and void. On and after the Confirmation Date, the provisions of the Plan shall be binding upon the Debtors, the Reorganized Debtor, the Estate, all holders of Claims, all holders of Interests and all other parties in interest in the Debtors' Cases, in each case whether or not such entities are impaired and whether or not such entities have accepted the Plan.

## ARTICLE XVI
## LIMITATION OF LIABILITY

**ARTICLE XIII OF THE PLAN CONTAINS CERTAIN PROVISIONS, DESCRIBED BELOW, WHICH, AMONG OTHER THINGS: (A) ENJOIN CREDITORS HOLDING CLAIMS AGAINST THE DEBTORS FROM COMMENCING OR CONTINUING ANY ACTION OR PROCEEDING ASSERTING SUCH CLAIMS AGAINST THE REORGANIZED DEBTOR, THE DEBTORS, OR THEIR ESTATES OTHER THAN TO ENFORCE RIGHTS UNDER THE PLAN; (B) EXCULPATE AND RELEASE THE DEBTORS, THEIR OFFICERS AND PROFESSIONALS FROM LIABILITY FOR ACTS OR OMISSIONS IN CONNECTION WITH THE DEBTORS, THE DEBTORS' PROPERTY, THE DEBTORS' BUSINESS, THE CASE OR THE PLAN, OTHER THAN ARISING FROM FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE.**

16.1      **General Injunction.**

**PURSUANT TO SECTIONS 105, 1123, 1129 AND 1141 OF THE BANKRUPTCY CODE, IN ORDER TO PRESERVE AND IMPLEMENT THE VARIOUS TRANSACTIONS CONTEMPLATED BY AND PROVIDED FOR IN THE PLAN, AS OF THE EFFECTIVE DATE AND THROUGH THE CONSUMMATION DATE, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR IN THE CONFIRMATION**

ORDER, ALL PERSONS OR ENTITIES THAT HAVE HELD, CURRENTLY HOLD OR MAY HOLD A CLAIM, DEBT, OR LIABILITY AGAINST THE DEBTORS, THE ESTATES OR ANY OF THEIR RESPECTIVE PROPERTY, ARE AND SHALL BE ENJOINED AND BARRED TO THE FULLEST EXTENT PERMITTED BY LAW FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF ANY SUCH CLAIMS, DEBTS, OR LIABILITIES, OTHER THAN ACTIONS BROUGHT TO ENFORCE ANY RIGHTS OR OBLIGATIONS UNDER THE PLAN OR THE PLAN DOCUMENTS:   (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING AGAINST THE REORGANIZED DEBTOR, THE DEBTORS, THEIR ESTATES, OR THEIR RESPECTIVE PROPERTY; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE REORGANIZED DEBTOR, THE DEBTORS, THEIR ESTATES, OR THEIR RESPECTIVE PROPERTY; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST THE REORGANIZED DEBTOR, THE DEBTORS, THEIR ESTATES, OR THEIR RESPECTIVE PROPERTY; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO THE REORGANIZED DEBTOR, THE DEBTORS, THEIR ESTATES, OR THEIR RESPECTIVE PROPERTY; (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN OR THE CONFIRMATION ORDER; OR (F) INTERFERING WITH OR IN ANY MANNER WHATSOEVER DISTURBING THE RIGHTS AND REMEDIES OF THE REORGANIZED DEBTOR, THE DEBTORS, THEIR ESTATES, OR THEIR RESPECTIVE PROPERTY UNDER THE PLAN AND THE PLAN DOCUMENTS AND THE OTHER DOCUMENTS EXECUTED IN CONNECTION THEREWITH.   THIS GENERAL INJUNCTION PROVISION IS AN INTEGRAL PART OF THE PLAN AND IS ESSENTIAL TO ITS IMPLEMENTATION. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, THE PROVISIONS OF § 13.1 OF THE PLAN SHALL NOT RELEASE, OR BE DEEMED A RELEASE OF, ANY OF THE CAUSES OF ACTION.

16.2    **Exculpation from Liability**.

THE DEBTORS, THEIR CURRENT OFFICERS, AND THEIR PROFESSIONALS (ACTING IN SUCH CAPACITY), (COLLECTIVELY, THE "EXCULPATED PARTIES") SHALL NEITHER HAVE NOR INCUR ANY LIABILITY WHATSOEVER TO ANY PERSON OR ENTITY FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN GOOD FAITH IN CONNECTION WITH OR RELATED TO THE FORMULATION, PREPARATION, DISSEMINATION, OR CONFIRMATION OF THE PLAN, THE DISCLOSURE STATEMENT, ANY PLAN DOCUMENT, OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO, OR ANY OTHER ACT TAKEN OR OMITTED TO BE TAKEN, IN CONNECTION WITH THE PLAN OR THE CASE, IN EACH CASE FOR THE PERIOD ON AND AFTER THE PETITION DATE AND THROUGH THE EFFECTIVE DATE; PROVIDED, HOWEVER, THAT THIS EXCULPATION FROM LIABILITY PROVISION

SHALL NOT BE APPLICABLE TO ANY LIABILITY FOUND BY A COURT OF COMPETENT JURISDICTION TO HAVE RESULTED FROM FRAUD OR THE WILLFUL MISCONDUCT OR GROSS NEGLIGENCE OF ANY SUCH PARTY.  THE RIGHTS GRANTED UNDER § 13.2 OF THE PLAN ARE CUMULATIVE WITH (AND NOT RESTRICTIVE OF) ANY AND ALL RIGHTS, REMEDIES, AND BENEFITS THAT THE EXCULPATED PARTIES HAVE OR OBTAIN PURSUANT TO ANY PROVISION OF THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW.  IN FURTHERANCE OF THE FOREGOING, THE EXCULPATED PARTIES SHALL HAVE THE FULLEST PROTECTION AFFORDED UNDER SECTION 1125(E) OF THE BANKRUPTCY CODE AND ALL APPLICABLE LAW FROM LIABILITY FOR VIOLATION OF ANY APPLICABLE LAW, RULE OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCE OR REJECTION OF A PLAN OR THE OFFER, ISSUANCE, SALE OR PURCHASE OF SECURITIES.  THIS EXCULPATION FROM LIABILITY PROVISION IS AN INTEGRAL PART OF THE PLAN AND IS ESSENTIAL TO ITS IMPLEMENTATION.  NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, THE PROVISIONS OF § 13.2 OF THE PLAN SHALL NOT RELEASE, OR BE DEEMED A RELEASE OF, ANY OF THE CAUSES OF ACTION.

16.3    **Release of Exculpated Parties**.

ON THE EFFECTIVE DATE, THE EXCULPATED PARTIES SHALL BE UNCONDITIONALLY AND ARE HEREBY DEEMED TO BE UNCONDITIONALLY RELEASED FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, LOSSES, RIGHTS, REMEDIES, CAUSES OF ACTION, CHARGES, COSTS, DEBTS, INDEBTEDNESS, OR LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE TAKING PLACE BETWEEN THE PETITION DATE AND THE EFFECTIVE DATE, WHICH IS IN ANY WAY RELATING TO THE DEBTORS, THE CASE, ANY PROPERTY OF THE DEBTORS, THE BUSINESS OR OPERATIONS OF THE DEBTORS, ANY PLAN DOCUMENTS, THE PLAN, OR ANY OF THE TRANSACTIONS CONTEMPLATED THEREBY; PROVIDED, HOWEVER, THAT THIS RELEASE PROVISION SHALL NOT BE APPLICABLE TO ANY LIABILITY FOUND BY A COURT OF COMPETENT JURISDICTION TO HAVE RESULTED FROM FRAUD OR THE WILLFUL MISCONDUCT OR GROSS NEGLIGENCE OF ANY SUCH EXCULPATED PARTY. THE CONFIRMATION ORDER SHALL ENJOIN THE PROSECUTION BY ANY PERSON OR ENTITY, WHETHER DIRECTLY, DERIVATIVELY OR OTHERWISE, OF ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, LOSS, RIGHT, REMEDY, CAUSE OF ACTION, CHARGE, COST, DEBT, INDEBTEDNESS, OR LIABILITY WHICH AROSE OR ACCRUED DURING SUCH PERIOD OR WAS OR COULD HAVE BEEN ASSERTED AGAINST ANY OF THE EXCULPATED PARTIES, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR IN THE CONFIRMATION ORDER. EACH OF THE EXCULPATED PARTIES SHALL HAVE THE RIGHT TO INDEPENDENTLY SEEK ENFORCEMENT OF THIS RELEASE PROVISION.  THIS

RELEASE PROVISION IS AN INTEGRAL PART OF THE PLAN AND IS ESSENTIAL TO ITS IMPLEMENTATION. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, THE PROVISIONS OF § 13.3 OF THE PLAN SHALL NOT RELEASE, OR BE DEEMED A RELEASE OF, ANY OF THE CAUSES OF ACTION.

16.4    **Barton Doctrine.**

The "Barton Doctrine," *e.g. Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881) (Supreme Court held that a trustee cannot be sued without leave of the bankruptcy court), which prohibits a party from suing either a trustee, the officers of a debtor in possession, or their attorneys, in a non-appointing court for acts done in their official capacity, shall pertain to the provisions of this Article XIII, and shall stand as one of the bases for enforcement of the provisions herein. *See, e.g., Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000)(" [j]oining the other circuits that have considered this issue, we hold that a debtor must obtain leave of the bankruptcy court before initiating an action in district court when that action is against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity"); *Patco Energy Express v. Lambros*, 2009 U.S. App. LEXIS 25771 (11th Cir. 2009) ("[w]here a plaintiff neglects to obtain leave from the appointing court, a suit filed [against a bankruptcy trustee] in another court must be dismissed for lack of subject matter jurisdiction"); *In the Matter of Linton*, 136 F.3d 544, 545 (7th Cir. 1998); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240-41 (6th Cir. 1993) ("[i]t is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action in a nonappointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court .... counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee"); *In re Balboa Improvements, Ltd.*, 99 B.R. 966, 970 (9th Cir. BAP 1989) (holding that permission to sue debtor's attorney for alleged misconduct in the administration of an estate must be obtained from the bankruptcy court.

16.5    **Continuation of Automatic Stay.**

The automatic stay arising out of Section 362(a) of the Bankruptcy Code shall continue in full force and effect until the Consummation Date and the Reorganized Debtor and its Estate shall be entitled to all of the protections afforded thereby.   The Court shall have the power to grant such additional and supplemental stays as may be necessary or appropriate to protect and preserve the assets of the Reorganized Debtor and/or the Estate or to permit the just and orderly administration of the Estate.  All assets of the Estate shall remain Property of the Estate until distributed in accordance with this Plan, and no entity shall at any time have any claim to or interest in any asset of the Estate except to the extent that such entity is the holder of an Allowed Claim entitled to Distributions under this Plan.

16.6    **No Liability for Tax Claims.**

Unless a taxing Governmental Authority has asserted a Claim against the Debtors before the Bar Date or Administrative Expense Claim Bar Date established therefore, no Claim of such Governmental Authority shall be Allowed against the  Debtors, the Estate, the Reorganized

Debtor, or their directors, officers, employees or agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtors, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period, or (ii) an audit of any return for a period before the Petition Date.    The entry of the Confirmation Order shall be deemed to be a determination that no provision of the Plan has avoidance of taxes as a principal purpose, and the Confirmation Order shall so provide.

16.7    **Regulatory or Enforcement Actions.**

Nothing in this Plan shall restrict any federal government regulatory agency from pursuing any regulatory or police enforcement action or performing its statutory duties against any Person or Entity in any forum, but only to the extent not prohibited by the automatic stay of Section 362 of the Bankruptcy Code or discharged or enjoined pursuant to Section 524 or 1141(d) of the Bankruptcy Code.    Nothing contained in Article XIII, Section 13.7 of the Plan is intended to, nor shall it, supersede or alter any applicable provisions of the Bankruptcy Code.

16.8    **No Liability for Untimely Administrative Expense Claims.**

Holders of Administrative Expense Claims (including Holders of any Claims for Postpetition federal, state or local taxes) that do not file an application or other Bankruptcy Court-approved pleading by the Administrative Expense Claims Bar Date will be forever barred from asserting such Administrative Expense Claims against the Debtors, the Reorganized Debtor, the Estate, or any of their respective Property.

## ARTICLE XVII
## LIQUIDATION ALTERNATIVE

The Debtors have analyzed whether a liquidation of their assets by Chapter 7 Trustees, who are unfamiliar with the Debtors, and their business, would result in a higher return to the Debtors' Creditors than they would receive under the Plan as proposed by the Debtors.    The Debtors have concluded that a Chapter 7 liquidation would result in a net return to Creditors that is considerably lower than the net return to Creditors through the Plan.    Under the Debtors' Plan, each Holder of an Allowed Unsecured Claim in Class 5 would receive full payment of the principal amount of the Claim within ninety (90) days after the Effective Date.    If the Plan cannot be confirmed under Bankruptcy Code Section 1129(a), the Chapter 11 Cases would likely be converted to cases under Chapter 7 of the Bankruptcy Code and not substantively consolidated.    A Chapter 7 Trustee would be appointed or elected to liquidate the assets of each Debtor for distribution to each Debtor's Creditors.    The Debtors believe that a conversion to Chapter 7 would likely result in substantial diminution in the payout to be realized by holders of Allowed Claims in Classes 2, 3 and 5 because (i) the Debtors would cease operating and would not be able to continue generating cash on a going-forward basis, and (ii) there would be substantial additional administrative expenses incurred as the Chapter 7 Trustees would need to retain new attorneys, accountants and/or other professionals, who would be unfamiliar with the Debtors' operations and who would need to become educated about the Debtors, their assets, and the Claims.    The Debtors believe that the

value of their assets as a going concern far outweighs the liquidation value of the Debtors' personal property.   Moreover, not only would the vast majority of Creditors holding Allowed Claims likely receive smaller distributions on account of their Allowed Claims if the case were converted to Chapter 7, they would also need to wait a longer period of time before receiving any such distributions than they would under the Plan.

In sum, the Debtors believe that the Plan provides for a greater return to Creditors than a liquidation under Chapter 7 of the Bankruptcy Code.

## ARTICLE XVIII
## CONCLUSION

The Debtors urge all Holders of Claims and Interests to accept the Plan because the Debtors believe the Plan will provide each such Holder more than it would receive pursuant to any alternative plan of liquidation or under Chapter 7 of the Bankruptcy Code.   Accordingly, Debtors urge all eligible members of Voting Classes to submit Ballots in favor of the Plan in accordance with the balloting procedures described herein.

This _____ day of April, 2021.

**VIRGINIA-HIGHLAND RESTAURANT, LLC**

By:  Jeffrey R. Landau
Its:  Authorized Officer

**RESTAURANT 104 LLC**

By:  Jeffrey R. Landau
Its:  Authorized Officer

J. ROBERT WILLIAMSON
Georgia Bar No. 765214
ASHLEY REYNOLDS RAY
Georgia Bar No. 601559
SCROGGINS & WILLIAMSON, P.C.
4401 Northside Parkway
Suite 450
Atlanta, Georgia 30327
T:  (404) 893-3880
F:  (404) 893-3880
E:  rwilliamson@swlawfirm.com
    aray@swlawfirm.com

*Counsel for Virginia-Highland Restaurant, LLC and Restaurant 104 LLC*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a true and correct copy of the attached **Disclosure Statement To Accompany Debtors' Plan of Reorganization** by causing it to be deposited in the United States Mail in a properly addressed envelope with adequate postage affixed thereon to the following:

Office of the United States Trustee
Suite 362, Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, GA   30303

and by the Court's CM/ECF system on all counsel of record registered in this case through CM/ECF.

This 9th day of April, 2021.

Respectfully submitted,

SCROGGINS & WILLIAMSON, P.C.

/s/ Ashley Reynolds Ray
J. ROBERT WILLIAMSON
Georgia Bar No. 765214
ASHLEY REYNOLDS RAY
Georgia Bar No. 601559
4401 Northside Drive
Suite 450
Atlanta, GA   303273
T:      404-893-3880
E:      rwilliamson@swlawfirm.com
        aray@swlawfirm.com

*Counsel for Virginia-Highland Restaurant,*
*LLC and Restaurant 104 LLC*